**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UPPER SKAGIT INDIAN TRIBE,
*Plaintiff-Appellee,*

and

UNITED STATES OF AMERICA,
*Plaintiff,*

v.

STATE OF WASHINGTON,
*Defendant,*

and

SUQUAMISH INDIAN TRIBE,
*Defendant-Appellant,*

v.

JAMESTOWN S'KLALLAM TRIBE;
LOWER ELWHA KLALLAM TRIBE;
LUMMI INDIAN NATION; NISQUALLY
INDIAN TRIBE; PORT GAMBLE
S'KLALLAM TRIBE; SKOKOMISH
INDIAN TRIBE; TULALIP TRIBE,
*Plaintiff-intervenors-Appellees,*

SWINOMISH INDIAN TRIBAL
COMMUNITY,
*Cross-claimant-Appellee.*

No. 07-35061
D.C. Nos.
CV-70-09213-RSM
SP-05-00003-RSM

ORDER AND
OPINION

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, District Judge, Presiding

Argued and Submitted
October 21, 2008—Seattle, Washington

209

Filed January 5, 2010

Before: Diarmuid F. O'Scannlain, Pamela Ann Rymer and
Andrew J. Kleinfeld, Circuit Judges.

Opinion by Judge Rymer;
Dissent by Judge Kleinfeld

## COUNSEL

Michelle Hansen, Office of Tribal Attorney, Suquamish, Washington, for appellant Suquamish Tribe. Douglas B.L.

Endreson, Sonosky, Chambers, Sachse, Endreson & Perry, Washington, D.C., for appellant Skokomish Indian Tribe. Lorane F. Hebert, Hogan & Hartson, Washington, D.C., for appellant Lower Elwha Klallam Tribe.

Harold Chesnin, Office of the Tribal Attorney, Sedro Woolley, Washington, (argued); Andrew H. Salter, Seattle, Washington, for appellee Upper Skagit Indian Tribe. James M. Jannetta, LaConner, W Washington, for appellee Swinomish Indian Tribal Community. Lauren P. Rasmussen, Law Offices of Lauren P. Rasmussen, Seattle, Washington, for appellees Port Gamble S'Klallam and Jamestown S'Klallam Tribes. Mason D. Morisset, Morisset, Schlosser, Jozwiak & McGaw, Seattle, Washington, for appellee The Tulalip Tribes.

Richard M. Berley, Ziontz, Chestnut, Varnell, Berley & Slonim, Seattle, Washington, for intervenor-appellants.

---

## ORDER

The petition for rehearing, filed August 20, 2009, is GRANTED and the petition for rehearing en banc is denied as moot.

This court's opinion filed, August 6, 2009 and published at *Upper Skagit Tribe v. Washington*, 576 F.3d 920 (9th Cir. 2009), is hereby withdrawn. A new opinion is filed concurrently herewith.

---

## OPINION

RYMER, Circuit Judge:

This case arises out of, and is a sub-proceeding of, *United States v. Washington*, 384 F. Supp. 312 (W.D. Wash. 1974)

("*Decision I*"), where Judge Boldt determined the usual and accustomed fishing grounds ("U&A") for Puget Sound tribes. Invoking the district court's continuing jurisdiction, *id*. at 419, Upper Skagit Indian Tribe[1] filed a Request for Determination that Saratoga Passage and Skagit Bay on the eastern side of Whidbey Island are not within the Suquamish Tribe's U&A (Subproceeding 05-3). On cross-motions for summary judgment, the district court concluded that Judge Boldt did not intend to include those areas in Suquamish's U&A, and accordingly granted summary judgment for Upper Skagit. We affirm.

I

As we previously said, "[w]e cannot think of a more comprehensive and complex case than this." *United States v. Suquamish Indian Tribe*, 901 F.2d 772, 775 (9th Cir. 1990). In short, Judge Boldt defined "usual and accustomed grounds and stations" as "every fishing location where members of a tribe customarily fished from time to time at and before treaty times, however distant from the then usual habitat of the tribe, and whether or not other tribes then also fished in the same waters." *Decision I*, 384 F. Supp. at 332; *United States v. Lummi Indian Tribe*, 235 F.3d 443, 445 (9th Cir. 2000) (quoting *Decision I*). The term "customarily" does not include "occasional and incidental" fishing or trolling incidental to travel. *Decision I*, 384 F. Supp. at 353. Tribes are entitled to take up to 50 percent of the harvested fish from runs passing through their off-reservation U&A grounds. *Id*. at 343.[2]

---

[1]Jamestown S'Klallam and Port Gamble S'Klallam joined as plaintiff-intervenors, as did the Tulalip Tribes. Swinomish Indian Tribal Community filed a cross-Request for Determination to the same general effect as Upper Skagit's. For convenience, we refer to these parties collectively as Upper Skagit unless context requires otherwise.

[2]We substantially affirmed *Decision I* in *United States v. Washington*, 520 F.2d 676 (9th Cir. 1975), and the Supreme Court upheld the decision with slight modification in *Washington v. Wash. State Commercial Passenger Fishing Vessel Ass'n*, 443 U.S. 658 (1979).

Judge Boldt determined Suquamish's U&A during supplemental proceedings on April 9-11, 1975. *See United States v. Washington*, 459 F. Supp. 1020, 1048-50 (W.D. Wash. 1978) ("*Decision II*"). The evidence consisted of the April 9 testimony and report of Dr. Barbara Lane, an expert for the United States on tribal identity, treaty status and fisheries for all of the tribes who intervened in the original proceedings in *Decision I*. She provided a map of Suquamish fishing sites, and her testimony also addressed a map attached to proposed Suquamish fishing regulations that outlined disputed areas of Suquamish's and other tribes' U&As. Based on this evidence, Judge Boldt ruled that the Suquamish had made a "prima facie" showing that its U&A fishing grounds were: "the marine waters of Puget Sound from the northern tip of Vashon Island to the Fraser River including Haro and Rosario Straits, the streams draining into the western side of this portion of Puget Sound and also Hood Canal." Finding of Fact No. 5 (FF 5), *Decision II*, 459 F. Supp. at 1049.[3]

In this Subproceeding, Upper Skagit alleges that the Suquamish began fishing in the Subproceeding Area[4] for the first time in 2004. It seeks an order determining that the portion of Saratoga Passage from the Snatelum Point Line to the Greenbank Line and Skagit Bay to the Deception Pass bridge is not

---

[3]In May 1985 the Suquamish filed a Request for Determination to determine their U&A on the eastern side of Puget Sound. *See Suquamish*, 901 F.2d at 774. We noted that "[a]t the time of the Treaty of Point Elliott, [the Suquamish] did not fish in those areas, which were the usual and accustomed fishing places of the Duwamish." *Id*. The Suquamish unsuccessfully argued that they were successors in interest to the Duwamish. We referred to the Suquamish's U&A as being the "west side of Puget Sound" whereas the Duwamish's was on the eastern side. *Id*. at 774, 776 n.9.

[4]The Upper Skagit originally defined the Subproceeding Area as Saratoga Passage, from the Greenbank Line north to the Snatelum Point Line, and Skagit Bay. The Swinomish cross-request defines the case area for their purposes as Catch Reporting Area 24C. Thus, as the district court described it, the case area encompasses that portion of Saratoga Passage within Catch Reporting Area 24C, plus Skagit Bay.

a U&A for the Suquamish. Upper Skagit argued in district court that there was no evidence before Judge Boldt in 1975 that Suquamish's U&A included those areas. Suquamish, on the other hand, contended that Judge Boldt's definition of its U&A unambiguously included the contested areas.

The district court adhered to a two-step procedure in keeping with our decisions in *Muckleshoot Tribe v. Lummi Indian Tribe*, 141 F.3d 1355 (9th Cir. 1998) ("*Muckleshoot I*"), *Muckleshoot Indian Tribe v. Lummi Indian Nation*, 234 F.3d 1099 (9th Cir. 2000) ("*Muckleshoot II*"), and *United States v. Muckleshoot Indian Tribe*, 235 F.3d 429 (9th Cir. 2000) ("*Muckleshoot III*"). First, it determined that Upper Skagit had the burden to offer evidence that FF 5 was ambiguous, or that Judge Boldt intended something other than its apparent meaning (i.e., all salt waters of Puget Sound). Second, if the evidence, including contemporaneous understanding of the extent of "the marine waters of Puget Sound," showed that "Puget Sound" as used in the Suquamish U&A included the Subproceeding Area, Upper Skagit had the burden to show that there was no evidence before Judge Boldt that the Suquamish fished on the east side of Whidbey Island or traveled there in route to the San Juans and the Fraser River area.

Applying this analysis, the court found that "Puget Sound" as defined by Judge Boldt included the waters of Saratoga Passage and Skagit Bay.[5] However, based on the actual evidence that was before Judge Boldt, the district court in this Subproceeding concluded that the judge meant something other than this in FF 5 given that nothing in the record showed

---

[5]Among other things, this was based on FF 164 in *Decision I*, adopting the definition of "Puget Sound" in the "Joint Statement Regarding the Biology, Status, Management, and Harvest of the Salmon and Steelhead Resources of the Puget Sound and Olympic Peninsula Drainage Area of Western Washington," 384 F. Supp. at 382-83, which included "the Strait of Juan de Fuca and all saltwater areas inland therefrom"; Judge Boldt's several references to "Puget Sound" as a broad area; and maps indicating that "Puget Sound" encompassed a very broad region.

the Suquamish fished on the east side of Whidbey Island, or traveled through there on their way up to the San Juans and the Fraser River area. The court noted that Judge Boldt relied heavily on Dr. Lane's reports and testimony. While she did say that the Suquamish traveled widely by canoe (as was "normal" for "all Indians in Western Washington"), Lane provided no evidence that the tribe fished or traveled in Saratoga Passage or Skagit Bay.[6] Her report listed places where the Suquamish traditionally took fish, but neither Saratoga Passage nor Skagit Bay was among them.[7] And when asked about a map delineating areas of Puget Sound where the Suquamish traveled, Lane referred only to areas that omitted Saratoga Passage and Skagit Bay. The Suquamish pointed out that they fished at the mouth of the Snohomish River, which is on the eastern side of Whidbey Island, but this area is well south of the Subproceeding Area and was described by Lane as a fall and winter fishing site at the mouth of a river, which was "separate and distinct from the spring and summer travels up to the Fraser River." Further, the district court noted the Suquamish's position that they maintained close relations with the Skagit and Snohomish people, who had fishing camps on Whidbey and Camano Islands, but thought it would be speculative to conclude this meant that the Suquamish must necessarily have camped and fished there as well. Finally, the court found that Judge Boldt's description of the

---

[6]Geographically, Saratoga Passage and Skagit Bay are nearly enclosed or inland waters to the east of Whidbey Island. The southern entrance to these waters includes Possession Sound and the mouth of the Snohomish River, where the Suquamish were known to fish seasonally. The northern exits through Deception Pass and Swinomish Slough are narrow and restricted; both areas were controlled by the Swinomish at treaty times.

[7]The places Dr. Lane listed where the Suquamish fished for salmon, herring, steelhead, halibut, and shellfish by trolling, spearing, nets, or traps were: Apple Cove Point, Hood Canal, Dye's Inlet, Liberty Bay, the head of Sinclair Inlet, Skunk Bay, Union River and Curley Creek, Blake Island, Jefferson Head, Point to Point, Rich's Passage, Orchard Point, Indianola, Ross Point, Miller's Bay, Agate Passage, and the area between Chico and Erland's point.

Suquamish U&A tracks nearly verbatim the language in Dr. Lane's report, demonstrating the judge's intent to conform the Suquamish U&A only to those areas documented by Lane.

The Suquamish timely appealed.

II

**[1]** The Suquamish mainly fault the district court for having engaged in a sufficiency of the evidence analysis instead of accepting Judge Boldt's unambiguous definition of "Puget Sound." In our view, however, the court faithfully followed the *Muckleshoot* construct. As *Muckleshoot III* indicates, whether the language of one of Judge Boldt's findings is ambiguous is a factor in ascertaining the judge's intent, but not a dispositive one, because it is necessary to understand the findings "in light of the facts of the case." 235 F.3d at 433 (internal quotation marks omitted). This means that, as the district court held here, the tribe asserting ambiguity in a U&A determination must offer " 'evidence that suggests that [the U&A] is ambiguous or that the court intended something other than its apparent meaning.' " *Id.* (quoting *Muckleshoot I*, 141 F.3d at 1358) (emphasis added in *Muckleshoot III* omitted). The determination is to be based on the record before Judge Boldt as of April 18, 1975, when he established the Suquamish's U&A, but may also include additional evidence if it sheds light on the understanding that Judge Boldt had of the geography at the time. *Muckleshoot II*, 234 F.3d at 1100 (citing *Muckleshoot I*, 141 F.3d at 1360).

**[2]** We agree with the district court that Upper Skagit met this burden. There is no evidence in the record before Judge Boldt that the Suquamish fished or traveled in the waters on the eastern side of Whidbey Island, particularly in Saratoga Passage or Skagit Bay. In addition to Dr. Lane's testimony and analysis upon which Judge Boldt relied heavily, the district court also reviewed the April 1975 hearing transcript for the day after Lane testified to ascertain the judge's intent. On

that occasion the state challenged the sufficiency of the Suquamish's prima facie showing that its U&A was as broad as claimed. Rejecting that challenge, Judge Boldt ruled from the bench:

> The Court finds that a prima facie showing has been made that travel and fishing of the Suquamish Tribe through the north Sound areas; *that is areas one and two as designated by the state*, was frequent and also regular, not merely occasional, and the application of the Suquamish for such a ruling is granted.

Transcript of proceedings, April 10, 1975 (emphasis added). The currently disputed Subproceeding Area is not in Areas One or Two, but in Area Four. Although Lane's Report showed that several areas on the west shores of Area Four comprised Suquamish's on-reservation territory and fishing locations,[8] there was no evidence from Lane or otherwise that the *east* shores of Area Four, as well as Skagit Bay and Saratoga Passage, were part of Suquamish's U&A.[9]

---

[8]The district court was either mistaken, or misspoke, when it said that the area designated as Area Four was not mentioned. Area Four was discussed in Dr. Lane's Report, but the discussion pertained to the west shores and not to that part of Area Four which includes Skagit Bay and Saratoga Passage.

[9]Given that the decision in this Subproceeding must be made on the record that was before Judge Boldt, augmented only by evidence of contemporaneous understanding of ambiguous terms — which the district court here gave the parties an opportunity to do — a trial on the merits would reveal no additional relevant facts. In these circumstances, the district judge, who is also the trier of fact, may resolve conflicting inferences and evaluate the evidence to determine Judge Boldt's intent. *See, e.g.*, *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1123-24 (5th Cir. 1978); *In re First Capital Holdings Corp.*, 179 B.R. 902, 904-05 (Bankr. C.D. Cal. 1995) (Tashima, J.) (so holding). Nor, given the lack of *any* evidence of Suquamish fishing or travel in these areas, let alone fishing that was more than "incidental" or "occasional," is there any basis for supposing that "it is just as likely" that Saratoga Passage and Skagit Bay were intended to be included as that they were not. *Cf. Lummi*, 235 F.3d at 452.

**[3]** In addition, Judge Boldt used specific geographic anchor points in describing other tribes' U&As. *See, e.g.*, *Decision I*, 384 F. Supp. at 360, 371 (Lummi and Puyallup U&As); *Decision II*, 459 F. Supp. at 1049 (Nooksack, Swinomish and Tulalip U&As). From this it is reasonable to infer that when he intended to include an area, it was specifically named in the U&A. In Suquamish's case, the only inclusive geographic anchor points for the term "Puget Sound" are the "Haro and Rosario Straits," which do not include or delineate the Subproceeding Area. That Judge Boldt neglected to include Skagit Bay and Saratoga Passage in the Suquamish's U&A supports our conclusion that he did not intend for them to be included. *See Lummi*, 235 F.3d at 451-52.

**[4]** The district court's conclusion does not have the effect of re-adjudicating Suquamish's U&A or diminishing it, as the Tribe contends, for the Suquamish never had the right to fish in those areas in the first place. Nor is it necessary, as the Suquamish suggests, to include the Subproceeding Area in its U&A in order to reconcile Judge Boldt's determination of the Suquamish and Swinomish U&As in his April 18, 1975 order. The Swinomish's U&A used the phrase "marine areas of northern Puget Sound," but it also used geographic anchors delineating an area that specifically included Saratoga Passage and Skagit Bay. As the district court (and the Suquamish) recognized, the inquiry properly focuses on individual U&As, and the fact that Judge Boldt defined "Puget Sound" in one instance as including Skagit Bay and Saratoga Passage does not mean that references to "Puget Sound" in other U&As always include those same areas. If anything, the judge's inclusion of reference points in one U&A but not in another indicates a lack of intent to include them generically. Finally, the Suquamish maintain that the district court erred in considering its post-1975 fishing regulations, however as we read the court's order, it merely referred to the scope of those regulations as an aside to the Suquamish's understanding of its own U&A — not as evidence bearing on Judge Boldt's intent in determining that U&A.

**[5]** Accordingly, we agree with the district court that Judge Boldt did not intend for Suquamish's U&A to include Skagit Bay and Saratoga Passage.[10]

AFFIRMED.

---

KLEINFELD, Circuit Judge, dissenting:

I respectfully dissent.

In my view, the better reading of "Puget Sound" is that it means "Puget Sound." We are engaged in the odd activity of deciding what a long deceased judge thought was accurate history about what happened 150 years earlier. We cannot retry the case. The best way to determine what the judge thought is the language he used. He said "Puget Sound." True, a good case could have been made under the evidence for something narrower, something along the lines the majority describes. There was not much evidence, not much more than a report by an anthropologist about what she thought had been the various tribal patterns 150 years before, based on extremely sparse evidence available to her. I laid out my view more fully in the earlier decision in this case, *Upper Skagit Tribe v. Washington*, 576 F.3d 920 (9th Cir. 2009). I could be wrong, and today's majority could be wrong, but I am pretty sure that it is a mistake to reopen the matter without any more chance of being right.

Continually revisiting Judge Boldt's decades-old opinions (and the limited record supporting them) in an attempt to discern what he thought the customs of multiple people were in the 1850's and earlier, besides being extremely burdensome

---

[10]Given this disposition, we do not need to reach Upper Skagit's further argument that Suquamish is judicially estopped from arguing that the term "Puget Sound" is ambiguous.

and expensive, is a fundamentally futile undertaking. The truth is not knowable. "This exercise is not law, and is not a reliable way to find facts, so it is hard to see why courts are doing it and how it could be preferable to the Indian tribes working some dispute resolution system out for themselves."[1] That we now reverse ourselves in this iteration of the case underscores the futility of our pursuit moving forward and demonstrates why Judge Boldt's 1974 decree and its implementation process, continuing this case in perpetuity, should be brought to an end.[2]

---

[1] *U.S. v. Washington*, 573 F.3d 701, 710-11 (9th Cir. 2009).
[2] *See id.*