**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TULALIP TRIBES,
 *Plaintiff-Appellant*,

v.

SUQUAMISH INDIAN TRIBE,
 *Defendant-Appellee*,

and

UNITED STATES OF AMERICA;
SWINOMISH TRIBAL COMMUNITY;
JAMESTOWN S'KLALLAM TRIBE;
LOWER ELWHA BAND OF
KLALLAMS; PORT GAMBLE
S'KLALLAM TRIBE; NISQUALLY
INDIAN TRIBE; SKOKOMISH INDIAN
TRIBE; UPPER SKAGIT INDIAN TRIBE;
LUMMI NATION; NOOKSACK INDIAN
TRIBE OF WASHINGTON STATE;
WASHINGTON STATE DEPARTMENT
OF FISH AND WILDLIFE; QUINAULT
INDIAN NATION; STILLAGUAMISH
TRIBE; PUYALLUP TRIBE;
MUCKLESHOOT INDIAN TRIBE;
QUILEUTE INDIAN TRIBE,
 *Real-parties-in-interest*.

No. 13-35773

D.C. Nos.
2:05-sp-00004-
RSM
2:70-cv-09213-
RSM

OPINION

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, District Judge, Presiding

Argued and Submitted
October 8, 2014—Seattle, Washington

Filed July 27, 2015

Before: Richard A. Paez, Jay S. Bybee,
and Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Paez

## SUMMARY[*]

### Indian Law

The panel affirmed the district court's summary judgment
in a treaty fishing rights case in which the Tulalip Tribes
sought a determination of the scope of the Suquamish Indian
Tribe's usual and accustomed fishing grounds and stations.

The Tulalip Tribes invoked the district court's continuing
jurisdiction as provided by a permanent injunction entered in
1974. The panel affirmed the district court's conclusion that
certain contested areas were not excluded from the
Suquamish Tribe's usual and accustomed fishing grounds and
stations, as determined by the district court in 1975.

[*] This summary constitutes no part of the opinion of the court. It has
been prepared by court staff for the convenience of the reader.

**COUNSEL**

Mason D. Morisset (argued) and Rebecca JCH Jackson, Morisset Schlosser Jozwiak & Somerville, Seattle, Washington, for Plaintiff-Appellant.

Howard G. Arnett (argued), Karnopp Peterson, Bend, Oregon; James Rittenhouse Bellis and Michelle Hansen, Office of the Reservation Attorney, Suquamish, Washington, for Defendant-Appellee.

**OPINION**

PAEZ, Circuit Judge:

In this treaty fishing rights case, the Tulalip Tribes ("the Tulalip") invoked the district court's continuing jurisdiction as provided by the permanent injunction in *United States v. Washington*, 384 F. Supp. 312, 419 (W.D. Wash. 1974) (*Decision I*), *aff'd*, 520 F.2d 676 (9th Cir. 1975), by filing a request for determination of the scope of the Suquamish Indian Tribe's ("the Suquamish") usual and accustomed fishing grounds and stations ("U&A"). The Tulalip sought a determination that the Suquamish's U&A, as determined by Judge Boldt in 1975, does not include Possession Sound, Port Gardner Bay, the mouth of the Snohomish River, and the bays on the west side of Whidbey Island (Admiralty Bay, Mutiny Bay, Useless Bay, and Cultus Bay). Ruling on cross-motions for summary judgment, the district court concluded that Judge Boldt did not intend to exclude the contested areas from the Suquamish's U&A and entered judgment accordingly. Reviewing de novo, we affirm.

## I. Background

There is a lengthy background to the complex litigation over the treaty fishing rights of the Indian tribes in Western Washington.  The historical background of the treaty negotiations is detailed in Judge Boldt's *Decision I*.  We will not repeat that background, although we do note several key facts to give context to the issues we address here.  Although Judge Boldt's rulings resolved many key issues over the extent of the Indian tribes' treaty fishing rights, there have been a number of post-judgment subproceedings seeking clarification of Judge Boldt's rulings.  This case is one such subproceeding.

In 1854 and 1855, several Indian tribes entered into treaties with Isaac Stevens, Washington Territorial Governor, on behalf of the United States.  *Decision I*, 384 F. Supp. at 330.  One of these treaties was the Treaty of Point Elliott, 12 Stat. 927 (signed January 22, 1855; ratified March 8, 1859; proclaimed April 11, 1859) ("the Treaty"), which is the treaty at issue here.  *Decision I*, 384 F. Supp. at 355.  Through these treaties, the United States "acquire[d] vast Indian lands."  *Id.* at 330.  As part of the negotiations, the tribes reserved the right to fish at "all usual and accustomed grounds and stations," including those off reservation.  *Id.* at 332.

In 1970, the United States filed a lawsuit against the State of Washington, among others, on behalf of several Western Washington Indian tribes, later joined by other tribes as intervenor plaintiffs.  *Id.* at 327.  The plaintiffs sought a declaratory judgment regarding the tribes' reserved treaty fishing rights and an injunction to enforce those rights.  *Id.* at 327–28.  In *Decision I*, Judge Boldt held that tribes that were

parties to the Treaty, or "Treaty Tribes," had a "right to take anadromous fish outside of reservation boundaries . . . limited . . . by geographical extent of the usual and accustomed places." *Id.* at 407. Judge Boldt also defined the Treaty Tribes' U&As throughout his ruling, and in later decisions.[1]

Judge Boldt took great care to define Treaty Tribes' U&As. According to Judge Boldt, the words "[u]sual and accustomed . . . indicate the exclusion of unfamiliar locations and those used infrequently or at long intervals and extraordinary occasions." *Id.* at 332. He defined a U&A as "every fishing location where members of a tribe customarily fished from time to time at and before treaty times, however distant from the then usual habitat of the tribe, and whether or not other tribes then also fished in the same waters." *Id.* Conversely, "occasional and incidental trolling" while traveling through thoroughfares does not constitute a U&A. *Id.* at 353. Judge Boldt's findings "set forth . . . some, but by no means all, of [the plaintiff tribes'] principal usual and accustomed fishing places." *Id.* at 333. After all, "[a]lthough there are extensive records and oral history from which many specific fishing locations can be pinpointed, it would be impossible to compile a complete inventory of any tribe's" U&As. *Id.* at 353.

In determining the tribes' U&As, Judge Boldt found anthropological reports prepared by Dr. Barbara Lane, an

---

[1] In *Decision I*, the court "retain[ed] jurisdiction . . . for the life of this decree to take evidence, to make rulings and to issue such orders as may be just and proper upon the facts and law and in implementation of this decree." 384 F. Supp. at 408. To invoke the court's continuing jurisdiction, a party must satisfy various procedural prerequisites and then file and serve a "Request for Determination." *Id.* at 419.

expert witness, to be "highly credible" and "very helpful in determining by direct evidence or reasonable inferences the probable location and extent of" U&As. *United States v. Washington*, 459 F. Supp. 1020, 1059 (W.D. Wash. 1978) (*Decision II*); *see also Decision I*, 384 F. Supp. at 350 (finding that Dr. Lane's reports "have been exceptionally well researched and reported and are established by a preponderance of the evidence").

Neither party to this subproceeding was a party to this litigation when Judge Boldt issued *Decision I*; both intervened afterwards. *Decision II*, 459 F. Supp. at 1028. Appellant, the Tulalip, is a political successor in interest to various groups of Indians that were parties to the Treaty. *Id.* at 1039. Appellee, the Suquamish, was an original party to the Treaty. *Id.* at 1040. Because neither tribe was a party to the *Decision I* proceedings, Judge Boldt determined their respective U&As in orders issued after his original order recognizing off-reservation fishing rights. The court held that the Suquamish had a right to fish at U&As outside of reservation boundaries. *Id.* at 1041. Later, the court declared that the Suquamish's U&A includes "the marine waters of Puget Sound from the northern tip of Vashon Island to the Fraser River including Haro and Rosario Straits, the streams draining into the western side of this portion of Puget Sound and also Hood Canal." *Id.* at 1049.

In June 2005, in a separate subproceeding, the Upper Skagit Tribe filed a Request for Determination that Saratoga Passage and Skagit Bay are not within the Suquamish's U&A. We affirmed the district court's judgment that neither Saratoga Passage nor Skagit Bay lie within the Suquamish's U&A. *Upper Skagit Indian Tribe v. Washington*, 590 F.3d 1020, 1026 (9th Cir. 2010).

Here, the Tulalip requested a determination that the inland marine waters east of Admiralty Inlet but west of Whidbey Island (Admiralty Bay, Mutiny Bay, Useless Bay, and Cultus Bay), as well as Saratoga Passage, Penn Cove, Holmes Harbor, Possession Sound, Port Susan, Tulalip Bay, and Port Gardner, do not lie within the Suquamish's U&A.

The Tulalip filed a motion for summary judgment asking the court to declare that the Suquamish's U&A is "limited to the west side of Puget Sound," and that "the Suquamish tribe does not have adjudicated usual and accustomed fishing grounds and stations in the marine waters of Saratoga Pass[age], Holmes Harbor, Port Susan, Possession Sound, or Port Gardner, and on the west side of Whidbey Island, including Useless Bay, Mutiny Bay, and Admiralty Bay."[2] The district court granted the motion as to Skagit Bay, Saratoga Passage, Penn Cove, Holmes Harbor, and Port Susan, following our opinion in the Upper Skagit subproceeding. The court, however, denied the motion as to Possession Sound, Port Gardner Bay, and the bays on the west side of Whidbey Island, specifically Admiralty Bay, Mutiny Bay, Useless Bay, and Cultus Bay, and declared that the Suquamish U&A included these waters. Upon making these determinations, which resolved all disputed issues, the court entered a final judgment.

The Tulalip timely appealed. The Tulalip's challenge before us, however, is limited to the district court's ruling that, in determining the Suquamish's U&A, Judge Boldt did not intend to exclude the mouth of the Snohomish River,

---

[2] The Tulalip's motion in the district court was styled as a "Motion for Declaratory Judgment." The parties, however, do not dispute that the district court treated the motion as a summary judgment motion.

Possession Sound, Port Gardner Bay, and the bays on the west side of Whidbey Island (Admiralty Bay, Mutiny Bay, Useless Bay, and Cultus Bay).

## II. Jurisdiction and Standard of Review

We have jurisdiction under 28 U.S.C. § 1291. *See United States v. Muckleshoot Indian Tribe*, 235 F.3d 429, 432 n.1 (9th Cir. 2000) (*Muckleshoot III*)[3] (citing *Van Cauwenberghe v. Biard*, 486 U.S. 517, 521–22 (1988) for the proposition that jurisdiction under § 1291 is proper when the district court's judgment in a subproceeding is final as to all disputed issues).

Our review is de novo, as the Tulalip appeal the district court's entry of summary judgment. *Muckleshoot v. Lummi*, 141 F.3d 1355, 1357 (9th Cir. 1998) (*Muckleshoot I*); *Muckleshoot III*, 235 F.3d at 432 (reviewing de novo a determination on summary judgment regarding Judge Boldt's finding of the Muckleshoot Tribe's U&A).

## III. The Suquamish's U&A

In *Upper Skagit*, we drew on our prior decisions interpreting Judge Boldt's U&A findings for various tribes to develop a two-step mode of analysis. First, the moving party bears the burden of offering evidence that a U&A finding was "ambiguous, or that Judge Boldt intended something other than [the text's] apparent meaning." *Upper Skagit*, 590 F.3d at 1023 (citing *Muckleshoot I*, *Muckleshoot Indian Tribe v.*

---

[3] As in the prior cases where we have discussed all three *Muckleshoot* cases, we name them chronologically, rather than based on the order in which they appear in this opinion.

*Lummi Indian Nation*, 234 F.3d 1099 (9th Cir. 2000) (*Muckleshoot II*), and *Muckleshoot III*). Second, the moving party bears the burden of showing that "there was no evidence before Judge Boldt" that would indicate that the contested area was included or excluded in the U&A of the nonmoving tribe. *Id.*

We have determined previously that, for the finding describing the Suquamish's U&A, Judge Boldt intended something different than the language's apparent meaning, which neither the Suquamish nor the Tulalip contest. *Upper Skagit*, 590 F.3d at 1025 (affirming the district court's determination that the Upper Skagit Tribe met its burden on the first prong). In *Upper Skagit*, the district court's reasoning, which we affirmed, began with a finding that the apparent meaning of the term "Puget Sound" from the Suquamish's U&A included the waters at issue in that case—Saratoga Passage and Skagit Bay. *Id.* at 1023. But, the district court determined that nothing before Judge Boldt demonstrated that the Suquamish fished in those contested waters, or traveled through those areas on their way to the Fraser River area. *Id.* at 1023–24. Therefore, the district court reasoned, Judge Boldt must have intended something other than the language's apparent meaning in defining the Suquamish's U&A. *Id.* It does not matter that the contested areas at issue here are slightly different; the finding that Judge Boldt intended something different than the plain text of the Suquamish U&A finding remains intact. We adhere to that determination and do not analyze further prong one of the *Muckleshoot* analytical framework.

Under prong two, the Tulalip have "the burden to show that there was no evidence before Judge Boldt that the Suquamish fished . . . or traveled" through the contested

areas. *See Upper Skagit*, 590 F.3d at 1023. All the contested waters here surround Whidbey Island, which is on the east side of Puget Sound. In *United States v. Suquamish Indian Tribe*, 901 F.2d 772, 778 (9th Cir. 1990), we stated that the "Suquamish . . . were not entitled to exercise fishing rights on the east side of Puget Sound." However, this statement is from the concluding paragraph of an opinion where we did not address the boundaries of the Suquamish's U&A. Rather, in that case, we affirmed the district court's finding that the Suquamish did not merge or consolidate with the Duwamish,[4] and therefore was not the successor in interest to the Duwamish's fishing rights. *Id.* at 777–78. Thus, *Suquamish* does not control the status of the contested waters in this subproceeding.

For analysis, we divide the contested areas into two categories: those east of Whidbey Island (Possession Sound, Port Gardner Bay, and the mouth of the Snohomish River) and those west of Whidbey Island (Cultus Bay, Useless Bay, Mutiny Bay, and Admiralty Bay).

## A. Eastern Contested Waters

We have made determinations previously about waters north of the eastern contested waters, east of Whidbey Island. In *Upper Skagit*, we affirmed the district court's determination that the Suquamish's U&A does not include Skagit Bay and Saratoga Passage. 590 F.3d at 1026. We stated that "[t]here is no evidence in the record before Judge

---

[4] The Duwamish's U&A on the eastern side of Puget Sound included Lake Washington, Lake Union, Lake Sammamish, the Black and Cedar Rivers, and the lower White or Duwamish River below its junction with the Green River. *Id.* at 774 n.2.

Boldt that the Suquamish fished or traveled in the waters on the eastern side of Whidbey Island." *Id.* at 1025.

Evidence that was before Judge Boldt indicates that the eastern contested waters are distinguishable from those at issue in *Upper Skagit*. In particular, the evidence before Judge Boldt demonstrates that the Suquamish traveled to the mouth of the Snohomish River and the waters immediately surrounding it to fish.

Materials from Dr. Lane, namely her reports and trial testimony, constitute evidence before Judge Boldt that the Suquamish traveled to the eastern contested waters to fish. The Suquamish, Dr. Lane explained, "had very limited kinds of resources within their home territory because almost uniquely of [the other tribes in this case] they had no large streams in their territory." The Suquamish "did in fact go to the larger rivers on the mainland in order to harvest salmon because they had no rivers in their own country." They "were accustomed to harvest their fall and winter salmon supplies at the rivers on the east side of Puget Sound. Modern Suquamish, as well as neighbouring Indians, have attested that the Suquamish traditionally fished at the mouths of the Duwamish and Snohomish Rivers as well as in the adjacent marine areas." Dr. Lane's testimony and reports constitute evidence that the Suquamish traveled to the mouth of the Snohomish river and the areas immediately surrounding it to fish. In light of this evidence, the Tulalip failed to meet their burden to show that there was "no evidence" before Judge Boldt that the Suquamish fished in or traveled through the eastern contested areas. *See id.* at 1023.

The Tulalip argue that we already determined this issue in *Upper Skagit*. We disagree. The evidence here relates to

the mouth of the Snohomish River and its immediate surroundings, rather than the waters further north or the waters east of Whidbey Island more generally.  Indeed, Dr. Lane stated several times that the mouths of rivers and the surrounding areas were unique.  First, she testified, as noted above, that the Suquamish "did in fact go to the larger rivers on the mainland in order to harvest salmon because they had no rivers in their own country."  Despite its proximity to Whidbey Island, the Snohomish River is a large river on the mainland.  Second, Dr. Lane explained that people "would gather to troll for the salmon as they gathered in the bays just prior to their entry into the rivers."  This evidence supports the district court's determination that Judge Boldt intended to include Possession Sound and Port Gardner Bay in Suquamish's U&A because salmon would swim through the marine waters just before entering the Snohomish River.  By contrast, Skagit Bay and Saratoga Passage, discussed in *Skagit Bay*, were larger bodies of water separate from a river.  Third, Dr. Lane's opinion about the Suquamish's harvest "on the east side of Puget Sound" including "at the mouths of the Duwamish and Snohomish rivers as well as in the adjacent marine areas" is distinct from Skagit Bay and Saratoga Passage because the river mouths are not near those areas.

As the district court concluded, in light of this evidence, the Tulalip cannot demonstrate that there was "no evidence" before Judge Boldt that the Suquamish fished or traveled in the eastern contested waters.  *See Upper Skagit*, 590 F.3d at 1023.  We hold that the Tulalip did not satisfy its burden to show that Judge Boldt intended to exclude the eastern contested waters from the Suquamish's U&A.

## B. Western Contested Waters

As with the eastern contested waters, the Tulalip must "show that there was no evidence before Judge Boldt that the Suquamish fished . . . or traveled through" the western contested waters. *See id.*

The Tulalip failed to meet that burden here because the record contains evidence that the Suquamish fished in these waters. Dr. Lane explained in a Suquamish-specific report that the Suquamish territory included "possibly. . . the west side of Whidbey Island. It is difficult at this time to establish the precise nature of Suquamish use of the west coast of Whidbey Island."[5] While Dr. Lane added that "there appears to be no clear evidence of Suquamish winter villages on the west side of Whidbey Island," she reported elsewhere that the "Suquamish travelled [*sic*] to Whidbey Island to fish." Moreover, there is other evidence supporting the Suquamish's use of the western contested waters. Dr. Lane explained generally that "[t]he deeper saltwater areas, the Sound, the straits, and the open sea, served as public thoroughfares, and as such, were used as fishing areas by anyone travelling [*sic*] through such waters." As indicated by the plain text of the Suquamish's U&A, the Suquamish traveled from "the marine waters of Puget Sound from the northern tip of Vashon Island to the Fraser River." *Decision II*, 459 F. Supp. at 1049. When traveling from Vashon Island to the Fraser River, the Suquamish would have passed through the waters west of

---

[5] Dr. Lane cited two treaty-time accounts: one from Achilles de Harley, who mentioned that the "Soquamish" occupied the west side of Whidbey Island in 1849, and one from George Gibbs, who wrote in 1854 that the Snohomish and Skagit tribes occupied Whidbey Island, but omitted the Suquamish.

Whidbey Island, and likely would have fished there while traveling.  This general evidence, too, constitutes some evidence before Judge Boldt and supports the district court's determination that Judge Boldt did not intend to exclude these contested bay areas from Suquamish's U&A.

Therefore, we hold that the Tulalip did not meet its burden to demonstrate that there was no evidence before Judge Boldt supporting Suquamish fishing or traveling through the western contested waters.  *See Upper Skagit*, 590 F.3d at 1023.

## IV. Conclusion

The Tulalip did not meet its burden to show that the contested areas in this subproceeding should be excluded from Suquamish's U&A.  Therefore, we affirm the district court's judgment.

**AFFIRMED**.