**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UPPER SKAGIT INDIAN TRIBE,
       *Plaintiff-Appellee*,

v.

SUQUAMISH INDIAN TRIBE,
       *Defendant-Appellant*,

JAMESTOWN S'KLALLAM TRIBE;
PORT GAMBLE S'KLALLAM
TRIBE; TULALIP TRIBES OF
WASHINGTON,
       *Real-Parties-In-Interest-*
       *Appellee*s,

and

PUYALLUP TRIBE;
STILLAGUAMISH TRIBE; HOH
INDIAN TRIBE; SQUAXIN ISLAND
TRIBE; SWINOMISH INDIAN
TRIBAL COMMUNITY;
SKOKOMISH INDIAN TRIBE;
NISQUALLY INDIAN TRIBE;
LUMMI NATION; MAKAH
INDIAN TRIBE; STATE OF
WASHINGTON,
       *Real-Parties-In-Interest.*

No. 15-35540

D.C. Nos.
2:14-sp-00001-RSM
2:70-cv-09213-RSM

OPINION

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, Chief District Judge, Presiding

Argued and Submitted August 30, 2017
Seattle, Washington

September 22, 2017

Before:  Michael Daly Hawkins and M. Margaret
McKeown, Circuit Judges, and Elizabeth E. Foote,[*]
District Judge.

Opinion by Judge Hawkins

---

## SUMMARY[**]

---

### Treaty Fishing Rights

In litigation over the treaty fishing rights of the Indian tribes in Western Washington, the panel affirmed the district court's order granting summary judgment in favor of the Upper Skagit Indian Tribe and determining the geographic scope of the Suquamish Indian Tribe's usual and accustomed fishing grounds and stations.

---

[*] The Honorable Elizabeth E. Foote, United States District Judge for the Western District of Louisiana, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

Interpreting Judge Boldt's determination, in 1975, of the Suquamish's usual and accustomed fishing grounds and stations, the panel followed the *Muckleshoot* analytical framework. At step one, the panel followed a prior case determining that Judge Boldt intended something different from the plain text of his findings. At step two, the panel concluded that the Upper Skagit showed that there was no evidence before Judge Boldt that the Suquamish fished or traveled through certain contested areas.

**COUNSEL**

John W. Ogan (argued) and Howard G. Arnett, Karnopp Petersen, Bend, Oregon; James Rittenhouse Bellis, Suquamish Tribe, Suquamish, Washington; for Defendant-Appellant Suquamish Indian Tribe.

David Stoller Hawkins (argued), Office of the Tribal Attorney, Upper Skagit Indian Tribe, Sedro Woolley, Washington; Andrew H. Salter, Teton Law Group LLC, Jackson, Wyoming; for Plaintiff-Appellee Upper Skagit Indian Tribe.

Lauren Patricia Rasmussen (argued), Law Offices of Lauren P. Rasmussen, Seattle, Washington, for Real-Parties-in-Interest-Appellees Jamestown S'Klallam and Port Gamble S'Klallam Tribes.

Mason D. Morisset and Rebecca JCH Jackson, Morisset Schlosser Jozwiak & Somerville, Seattle, Washington, for Real Parties in Interest-Appellees Tulalip Tribes.

**OPINION**

HAWKINS, Circuit Judge:

In this treaty fishing rights case, the Upper Skagit Indian Tribe ("the Upper Skagit") filed a Request for Determination as to the geographic scope of the Suquamish Indian Tribe's ("the Suquamish") usual and accustomed fishing grounds and stations ("U&A") as determined by Judge Boldt in 1975. Specifically, the Upper Skagit sought a determination that the Suquamish's U&A determinations do not include Chuckanut Bay, Samish Bay, and a portion of Padilla Bay where the Upper Skagit has its own court-approved U&A determinations ("the Contested Waters"). On cross-motions for summary judgment, the district court concluded that Judge Boldt did not intend to include the Contested Waters in the Suquamish's U&A determinations and, accordingly, granted summary judgment to the Upper Skagit. We have jurisdiction pursuant to 28 U.S.C. § 1291. Reviewing de novo, we affirm.

## I. Background

As this Court has noted, "[t]here is a lengthy background to the complex litigation over the treaty fishing rights of the Indian tribes in Western Washington." *Tulalip Tribes v. Suquamish Indian Tribe*, 794 F.3d 1129, 1131 (9th Cir. 2015). In the first *United States v. Washington* decision, Judge Boldt determined the U&As for several tribes and defined "usual and accustomed grounds and stations" as "every fishing location where members of a tribe customarily fished from time to time at and before treaty times, however distant from the then usual habitat of the tribe, and whether or not other tribes then also fished in the same waters." 384 F.

Supp. 312, 332 (W.D. Wash. 1974) (*Decision I*), *aff'd*, 520 F.2d 676 (9th Cir. 1975).  By contrast, Judge Boldt explained, "occasional and incidental trolling" in marine waters "used as thoroughfares for travel" does not constitute a U&A.  *Id.* at 353.

Approximately one year after Judge Boldt issued *Decision I*, the Suquamish, along with several other tribes, intervened by filing a Request for Determination for the right to participate in a herring fishery.  *See United States v. Washington*, 459 F. Supp. 1020, 1027–28 (W.D. Wash. 1978) (*Decision II*).   To support its Request, the Suquamish submitted three anthropological reports by expert witness Dr. Barbara Lane regarding tribal fishing.  One of Dr. Lane's reports specifically pertained to fishing by the Suquamish at and before the time of the Treaty of Point Elliott.  Judge Boldt found Dr. Lane's reports "to be 'highly credible' and 'very helpful in determining by direct evidence or reasonable inferences the probable location and extent of' U & As." *Tulalip*, 794 F.3d at 1132 (quoting *Decision II*, 459 F. Supp. at 1059).

In March 1975, Judge Boldt concluded that the Suquamish had made a prima facie showing of treaty entitlement to participate in the herring fishery and would be entitled to conduct herring fisheries at its claimed U&A determinations, "subject to the state's authority to contest any such location."  Judge Boldt also scheduled a hearing "to receive further anthropological or biological testimony" about unresolved "herring fishery issues."

Before that hearing began, the Suquamish filed proposed fishing regulations, as well as a map identifying its claimed U&A determinations ("Claim Map"), divided into four areas:

roughly, the Strait of Juan de Fuca through the San Juan Islands ("Area One"); north of the San Juan Islands to the Canadian Border ("Area Two"); east and southeast of Lummi Island, including Bellingham Bay, Hale Passage,[1] and the Contested Waters ("Area Three"); and southeast of the San Juan Islands through Hood Canal and into the southern Puget Sound ("Area Four").

In April 1975, Judge Boldt presided over three days of hearings regarding his prima facie U&A determinations. Dr. Lane testified to several tribes' treaty-time fishing, including the Suquamish's. The state objected that the Suquamish had not sufficiently proven that its U&A determinations "reach[ed] as far north" as claimed, but the court ruled that, because "no tribe has objected, . . . that is at least sufficient prima facie showing[.]" Nevertheless, Judge Boldt instructed the state and the Suquamish to question Dr. Lane on that issue. After Dr. Lane finished testifying, the state reiterated its objection, contending the Suquamish had made a "deficient" claim of entitlement to its U&A determinations in "all or a portion of [Areas One and Two]." Judge Boldt ruled from the bench that the Suquamish had made a prima facie showing of its U&A determinations "through the north Sound areas; that is, areas one and two." Neither the state nor Judge Boldt discussed the Suquamish's U&A determinations in Area Three of the Claim Map, where the Contested Waters in this proceeding lie.

Judge Boldt then issued a written order ("the Order") holding that the Suquamish's U&A determinations "include the marine waters of Puget Sound from the northern tip of

---

[1] Also referred to as "Hales Passage" and "Hale's Passage" in the record.

Vashon Island to the Fraser River including Haro and Rosario Straits, the streams draining into the western side of this portion of Puget Sound and also Hood Canal." *Decision II*, 459 F. Supp. at 1049.

Invoking the district court's continuing jurisdiction, the Upper Skagit and the Tulalip Tribes have each challenged the Suquamish's U&A determinations.[2] In subproceeding 05-03, this Court affirmed that the Suquamish's U&A determinations do not include Saratoga Passage or Skagit Bay. *See Upper Skagit Indian Tribe v. Washington*, 590 F.3d 1020, 1026 (9th Cir. 2010). And in subproceeding 05-04, this Court affirmed that the Suquamish's U&A determinations do include Possession Sound, Port Gardner Bay, and the mouth of the Snohomish River, as well as Cultus Bay, Useless Bay, Mutiny Bay, and Admiralty Bay. *See Tulalip*, 794 F.3d at 1133–36.

In 2014, the Upper Skagit initiated this proceeding by filing a Request for Determination that the Suquamish's U&A determinations do not include the Contested Waters—that is, Chuckanut Bay, Samish Bay, and a portion of Padilla Bay where the Upper Skagit has its own court-approved U&A determinations. On cross-motions for summary judgment, the district court concluded that Judge Boldt did not intend to include the Contested Waters in the Suquamish's U&A determinations, because the record before Judge Boldt lacked

---

[2] In *Decision I*, the district court retained jurisdiction "to take evidence, to make rulings and to issue such orders as may be just and proper upon the facts and law and in implementation of this decree." 384 September 18, 2017F. Supp. at 408. A party invoking the court's continuing jurisdiction "must satisfy various procedural prerequisites and then file and serve a 'Request for Determination.'" *Tulalip*, 794 F.3d at 1131 n.1 (quoting *Decision I*, 384 F. Supp. at 419).

any evidence that the Suquamish fished or traveled through the Contested Waters. Accordingly, the district court granted summary judgment to the Upper Skagit. The court also declined to apply claim preclusion to the Upper Skagit's Request for Determination. This timely appeal followed.[3]

## II. Discussion

This Court follows the two-step *Muckleshoot* analytical framework to interpret Judge Boldt's U&A findings. *Tulalip*, 794 F.3d at 1133; *see Upper Skagit*, 590 F.3d at 1023 (citing *Muckleshoot Tribe v. Lummi Indian Tribe*, 141 F.3d 1355 (9th Cir. 1998) (*Muckleshoot I*), *Muckleshoot Indian Tribe v. Lummi Indian Nation*, 234 F.3d 1099 (9th Cir. 2000) (*Muckleshoot II*), and *United States v. Muckleshoot Indian Tribe*, 235 F.3d 429 (9th Cir. 2000) (*Muckleshoot III*)). At step one, "the moving party bears the burden of offering evidence that a U & A finding was 'ambiguous, or that Judge Boldt intended something other than [the text's] apparent meaning.'" *Tulalip*, 794 F.3d at 1133 (alteration in original) (quoting *Upper Skagit*, 590 F.3d at 1023). This Court has previously determined that "Judge Boldt intended something different than the plain text of the Suquamish U & A

---

[3] As an initial matter, we conclude there was no error in the district court's refusal to apply claim preclusion to the Upper Skagit's Request for Determination. The *Upper Skagit* subproceeding did not involve the same contested waters as those at issue here; *Upper Skagit* involved Saratoga Passage and Skagit Bay, waters east of Whidbey Island, while the current subproceeding concerns Chuckanut Bay, Samish Bay, and a portion of Padilla Bay, waters off of Bellingham Bay. *See* 590 F.3d at 1022. Thus, *Upper Skagit* and the current subproceeding do not "arise out of the same transactional nucleus of facts," and the requisite identity of claims to support the application of claim preclusion does not exist. *See Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1052 (9th Cir. 2005).

finding." *Id.*; *see Upper Skagit*, 590 F.3d at 1025. Accordingly, the *Muckleshoot* analysis proceeds to step two. *See Tulalip*, 794 F.3d at 1133 ("We adhere to that determination and do not analyze further prong one of the *Muckleshoot* analytical framework.").

At step two, the moving party bears "the burden to show that there was no evidence before Judge Boldt that the Suquamish fished . . . or traveled through the contested areas." *Id.* (quoting *Upper Skagit*, 590 F.3d at 1023) (internal quotation marks omitted). This analysis depends on review of the entire record before Judge Boldt at the time of his Suquamish U&A finding, as well as his factual findings and, possibly, "additional evidence if it shed[s] light on the understanding that Judge Boldt had of the geography at the time." *Muckleshoot II*, 234 F.3d at 1100; *see Muckleshoot III*, 235 F.3d at 433; *Muckleshoot I*, 141 F.3d at 1359. The Court may not "alter, amend, or enlarge" Judge Boldt's U&A finding. *Muckleshoot I*, 141 F.3d at 1360.

Thus, we must decide whether the moving party, the Upper Skagit, carried its burden to show there was no evidence before Judge Boldt that the Suquamish fished or traveled through Chuckanut Bay, Samish Bay, and a portion of Padilla Bay. *See Tulalip*, 794 F.3d at 1133. Dr. Lane's Suquamish-specific report and testimony are particularly relevant to the question of the Suquamish's U&A determinations, *see id.* at 1134–36 (reviewing Dr. Lane's report and testimony to determine whether the Suquamish's U&A determinations include contested waters); *Upper Skagit*, 590 F.3d at 1025 (same), but we also consider the language Judge Boldt used in the Order to define the Suquamish's U&A determinations, *see Upper Skagit*,

590 F.3d at 1025. We conclude that the Upper Skagit met its burden here.

Neither Dr. Lane's testimony nor her reports contain any indication that the Suquamish fished or traveled through the Contested Waters. Rather, almost all the Suquamish fisheries Dr. Lane identified are located on the western side of Puget Sound, near the Kitsap Peninsula and Bainbridge Island. The only Suquamish fisheries Dr. Lane identified on the eastern side of Puget Sound are the Duwamish and Snohomish Rivers, which are located considerably south of the Contested Waters.

Dr. Lane also described that the Suquamish traveled regularly through the San Juan Islands and to the Fraser River and that the Suquamish "undoubtedly would have fished the marine waters along the way." Dr. Lane did not describe the route the Suquamish would have taken to reach the Fraser River from its home territory, although Dr. Lane did indicate that the Suquamish traveled through the San Juan Islands and then northbound through waters adjacent to Birch Bay; the state's attorney asked Dr. Lane whether the Suquamish fished in the San Juan Islands and the "area off of Birch Bay on the way up to the Fraser River," and Dr. Lane replied, "I think it's entirely likely that [the Suquamish] fished for whatever was available as they were traveling through those waters and that they visited those waters regularly as a usual and accustomed matter in order to fish." In addition, in *Tulalip*, this Court explained that "[w]hen traveling from Vashon Island to the Fraser River, the Suquamish would have passed through the waters west of Whidbey Island, and likely would have fished there while traveling." 794 F.3d at 1135. This explanation, as well as Dr. Lane's evidence that the Suquamish regularly traveled through the San Juan Islands

and to the Fraser River, leads us to conclude that the Suquamish traveled through the waters west of Whidbey Island and then proceeded directly north through the San Juan Islands—not east to waters off of Bellingham Bay—en route to the Fraser River.

However, during questioning by the Swinomish Tribe's attorney, Dr. Lane opined that it was "[p]robable that the Indians traveling northward would travel through Hales Passage," which is roughly northwest of the Contested Waters. Dr. Lane made that statement while testifying about the Samish, Swinomish, and Lummi tribes, and she later clarified, "I have no direct evidence of other tribes [than the Lummi] fishing in Hales Passage at treaty times. It is my opinion that it is quite likely that they may well have done so with the concurrence of the Lummi people who were living there." Dr. Lane did not identify the Suquamish as one of those tribes.

Absent any other indication in Dr. Lane's report or testimony that the Suquamish might have traveled to the Contested Waters to fish, the "general evidence" of northward travel through Hale Passage, which itself is merely adjacent to the Contested Waters, is insufficient to show the Suquamish traveled or fished through the Contested Waters. This case is distinguishable from *Tulalip*, which relied on both general and specific evidence that the Suquamish fished and traveled through waters west of Whidbey Island. *See* 794 F.3d at 1135. Specifically, *Tulalip* held that the Suquamish's U&A determinations include waters west of Whidbey Island based on specific evidence from Dr. Lane that the Suquamish's territory possibly included Whidbey Island's western side and that the Suquamish traveled to Whidbey Island to fish, as well as on the "general evidence"

that "[t]he deeper saltwater areas, the Sound, the straits, and the open sea . . . were used as fishing areas by anyone travelling [*sic*] through such waters." *Id.* (first and third alterations in original). Here, by contrast, the record contains no specific or general evidence that the Suquamish fished or traveled through the Contested Waters.

In her testimony, Dr. Lane discussed Suquamish fisheries in northern Puget Sound, in the area from the San Juan Islands to the Fraser River. Neither the Suquamish nor the state elicited any testimony from her regarding Suquamish fisheries on the eastern side of Puget Sound. Dr. Lane's sole testimonial reference to northeastern Puget Sound in relation to the Suquamish apparently excluded the tribe from waters neighboring the Contested Waters; Dr. Lane stated that the Suquamish, who had "their own place[s]" to fish for herring, "would not go all the way over into Bellingham Bay in order to get the herring that were spawning" in Lummi territory. Dr. Lane named three sites as Suquamish herring fisheries, all of which are off the Kitsap Peninsula's eastern coast.

In sum, "[n]one of Dr. Lane's testimony identified specific areas as far" east and north as the Contested Waters. *See United States v. Lummi Indian Tribe*, 235 F.3d 443, 451 (9th Cir. 2000) (finding Judge Boldt did not intend to include contested waters in the Lummi Indian Tribe's U&A determinations because, in part, "[n]one of Dr. Lane's testimony identified specific areas as far west and south" as the contested waters). We conclude that neither Dr. Lane's report nor her testimony indicates the Suquamish fished or traveled through the Contested Waters.

Additionally, Judge Boldt's failure to name the Contested Waters in the Suquamish's U&A determinations supports the

conclusion that he did not intend to include them. *See Upper Skagit*, 590 F.3d at 1025. This factor alone is not dispositive, however, considering our holding in *Tulalip* that the Suquamish's U&A determinations include the mouth of the Snohomish River, Possession Sound and Port Gardner Bay, none of which Judge Boldt named in the Suquamish's U&A determinations. *See* 794 F.3d at 1134–36. But based on the evidence before Judge Boldt, and on Dr. Lane's report and testimony, specifically, we conclude Judge Boldt did not intend to include the Contested Waters in the Suquamish's U&A determinations. *See id.*; *Upper Skagit*, 590 F.3d at 1025.

Nevertheless, the Suquamish insists "the entire record" does indeed indicate that Judge Boldt intended to include the Contested Waters in the Suquamish's U&A determinations. These arguments are unavailing. First, the Suquamish points to the 1975 proceedings before Judge Boldt and, in particular, to the lack of tribal objection at that time to the entirety of the Suquamish's claimed U&A determinations, comprising Areas One, Two, Three and Four on the Claim Map. However, the law of this case belies the notion that Judge Boldt intended to include the entirety of the Suquamish's claimed U&A determinations. In *Upper Skagit*, we concluded that Judge Boldt did not intend for the Suquamish's U&A determinations to include Skagit Bay and Saratoga Passage, which lie within Area Four of Suquamish's claimed U&A determinations. *See* 590 F.3d at 1026. In so holding, this Court decided by necessary implication that Judge Boldt did not intend to include the entirety of the Suquamish's claimed U&A determinations, and we decline to reconsider the issue. *See Lummi Indian Tribe*, 235 F.3d at 452.

The Suquamish also contends that, by "approving" proposed "Joint Indian Herring Roe Fishing Regulations" ("Joint Regulations"), Judge Boldt revealed his understanding that the Suquamish's U&A determinations include the Contested Waters. But the record does not state that the Joint Regulations reflect the geographic scope of the Suquamish's treaty-time fishing, or that Judge Boldt considered the Joint Regulations as such. And on their face, the Joint Regulations appear to exclude the Suquamish from the Contested Waters.

Finally, the Suquamish claims that Judge Boldt intended to include the Contested Waters because he recognized the existence of a private agreement among the Suquamish, Lummi, and Nooksack Tribes regarding Hale Passage. However, Judge Boldt's reference to this extrajudicial agreement does not indicate that he intended to include Hale Passage or, more important for this proceeding, the Contested Waters in the Suquamish's U&A determinations. In fact, Judge Boldt explained that the Suquamish, Lummi, and Nooksack Tribes, "without relinquishing any claims to fishing locations," had agreed "*not* to request a court determination as to their relationship with each other" in Hale Passage. *Decision II*, 459 F. Supp. at 1049 (emphasis added).

Therefore, we find unavailing the Suquamish's attempts to broaden the evidence bearing on Judge Boldt's intent in delineating the Suquamish's U&A determinations. Based on our review of the entire record before Judge Boldt, we agree with the district court that Judge Boldt did not intend to

include Chuckanut Bay, Samish Bay, and the portion of Padilla Bay in the Suquamish's U&A determinations.[4]

**AFFIRMED.**

---

[4] We deny as moot the Upper Skagit's motion to strike from the Excerpts of Record the Suquamish's post-1975 fishing regulations. We note, however, that the Suquamish's post-1975 fishing regulations were not part of the record before Judge Boldt. And unlike a geography expert's testimony, the regulations do not shed light on Judge Boldt's understanding of the geography at the time. *Cf. Muckleshoot II*, 234 F.3d at 1100. The post-1975 fishing regulations reflect "the Suquamish's understanding of its own U & A," rather than "Judge Boldt's intent in determining that U & A." *See Upper Skagit*, 590 F.3d at 1026. At any rate, because we do not look to the post-1975 regulations as evidence of Judge Boldt's intent, we deny the Upper Skagit's motion to strike as moot.