141 F.3d 1355
 28 Envtl. L. Rep. 21,174, 98 Cal. Daily Op.
Serv. 2843,
98 Daily Journal D.A.R. 3920
 MUCKLESHOOT TRIBE, Plaintiff-Appellee,
and
Squaxin Island; Nisqually Indian Tribe; Puyallup Tribe, Plaintiffs,
v.
LUMMI INDIAN TRIBE, Defendant-Appellant.
MUCKLESHOOT TRIBE, Plaintiff-Appellee,
and
Squaxin Island; Puyallup Tribe; Nisqually Indian Tribe, Plaintiffs,
v.
LUMMI INDIAN TRIBE, Defendant,
v.
SWINOMISH INDIAN TRIBAL, Defendant-Appellant.
 Nos. 96-35341, 96-35342.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 5, 1997.
Decided April 17, 1998.
 
 Harry L. Johnsen and Daniel A. Raas, Raas, Johnsen & Stuen, Bellingham, WA; Allan E. Olson, Office of the Tribal Attorney, LaConner, WA, for defendants-appellants.
 Gregory M. O'Leary, Seattle, WA, for plaintiff-appellee.
 Appeals from the United States District Court for the Western District of Washington; Barbara J. Rothstein, Chief Judge, Presiding. D.C. No. CV-70-09213-BJR.
 Before: FLETCHER and O'SCANNLAIN, Circuit Judges, and SCHWARZER,* Senior District Judge.
 SCHWARZER, Senior District Judge:
 This appeal brings before us two disputes, (1) between the Muckleshoot Indian Tribe ("Muckleshoot") and the Swinomish Indian Tribal Community ("Swinomish") and (2) between the Muckleshoot and the Lummi Indian Nation ("Lummi"), over the interpretation of a decree adjudicating Indian treaty fishing rights in Washington state in respect to salmon and defining the "usual and accustomed fishing places" of the parties to this appeal in respect thereto. United States v. Washington, 384 F.Supp. 312, 360 (W.D.Wash.1974) (Boldt, J.) [hereinafter "Decision I"]; United States v. Washington, 459 F.Supp. 1020, 1049 (W.D.Wash.1978) (Boldt, J.) [hereinafter "Decision II"]. The district court granted summary judgment adopting the interpretations claimed by Muckleshoot. For the reasons stated below, we affirm in part, reverse in part and remand for further proceedings consistent with this opinion.
 FACTS AND PROCEDURAL HISTORY
 In September 1986, Muckleshoot, along with other south Puget Sound tribes, invoked the district court's continuing jurisdiction under Decision I by filing a request for determination ("RFD"), initiating subproceeding 86-5 to seek "equitable allocation" of the treaty share of the case-area salmon harvest. The petitioning south Puget Sound tribes asked for an injunction restraining the fisheries of certain north Puget Sound tribes, including Lummi and Swinomish, that intercepted south Puget Sound salmon on their return migration through the ocean, the Strait of Juan de Fuca and Puget Sound.
 After lengthy and unsuccessful mediation efforts, the north Puget Sound tribes in February 1995 moved to dismiss subproceeding 86-5. At the same time, Muckleshoot filed a motion for partial summary judgment against Swinomish and Lummi seeking rulings that (1) Swinomish's "usual and accustomed fishing grounds and places," as adjudicated in Finding of Fact No. 6 ("FF 6") in Decision II, 459 F.Supp. at 1049, did not include waters within Puget Sound Commercial Salmon Management and Catch Reporting Area 10 ("Area 10")[1] and (2) Lummi's "usual and accustomed fishing grounds and places," as adjudicated in Finding of Fact No. 46 ("FF 46") in Decision I, 384 F.Supp. at 360, did not include waters within Area 10.
 The district court granted Muckleshoot's motion for partial summary judgment against Swinomish, determining that the latter tribe's fishing locations under Decision II did not include waters in Area 10. At the same time, the court continued the motion against Lummi to permit that tribe to depose Dr. Barbara Lane, an expert witness whose anthropological report on historical tribal fishing grounds was the major item of evidence relied on by Judge Boldt in Decision I, 384 F.Supp. at 350. The district court subsequently granted Muckleshoot's motion for partial summary judgment against Lummi, determining that Lummi's fishing locations under Decision I did not include waters in Area 10. It also dismissed subproceeding 86-5 without prejudice but subject to limitations on refiling.
 DISCUSSION
 I. Appellate Jurisdiction and Standard of Review
 The district court had subject matter jurisdiction of the underlying proceedings pursuant to 28 U.S.C. §§ 1345, 1362 and 1331. In Decision I, the district court had retained continuing jurisdiction to administer the decree and to resolve specified matters as they arose. 384 F.Supp. at 419.
 Upon granting Muckleshoot's motion for partial summary judgment, the court directed entry of judgment pursuant to Fed.R.Civ.P. 54(b). Accordingly we have jurisdiction under 28 U.S.C. § 1291.
 A grant of summary judgment is reviewed de novo. Covey v. Hollydale Mobilehome Estates, 116 F.3d 830, 834 (9th Cir.1997).
 II. Failure to Initiate Separate Subproceeding
 Swinomish contends that the district court erred in entertaining Muckleshoot's partial summary judgment motion within subproceeding 86-5. The tribe argues that Muckleshoot violated the decree by pursuing the Area 10 fishing grounds claims in subproceeding 86-5 rather than initiating a separate subproceeding as provided for in paragraph 25 of the decree in Decision I ("Paragraph 25"). See 384 F.Supp. at 419.[2] Subproceeding 86-5, Swinomish argues, raised only fair allocation issues of treaty-share salmon, not clarification of usual and accustomed fishing grounds. As a result, Swinomish claims, it did not have sufficient notice of Muckleshoot's intent to litigate these claims.
 While agreeing that Muckleshoot failed to follow the procedure of convening a conference pursuant to Paragraph 25 and then filing a separate subproceeding, the district court nevertheless determined that appellants had not stated any practical reason for requiring technical compliance with Paragraph 25 under the circumstances of this case. Because both Lummi and Swinomish had notice of the issue for several years, the court found that the failure to file a separate subproceeding did not prejudice them. Muckleshoot's motion, moreover, did not seek determination of a new issue but sought only clarification of two findings in the prior decrees.
 We review a decision regarding the management of litigation for abuse of discretion. O'Neill v. United States, 50 F.3d 677, 687 (9th Cir.1995). We find no abuse of discretion in the district court's decision to entertain Muckleshoot's motion without requiring initiation of a new, separate subproceeding with all of the attendant cost and delay. Since the district court limited its review to clarifying the two prior findings by Judge Boldt, neither Swinomish nor Lummi was prejudiced by the district court because both appellants had notice of Muckleshoot's contention with respect to Area 10 for several years. In the RFD, the petitioners specifically identified Area 10 as a marine area where northern tribes had developed large fisheries that took south Puget Sound region-of-origin salmon. During mediation, Muckleshoot raised Lummi's and Swinomish's right to fish in Area 10 as a key issue relating to intertribal allocation of the salmon harvest. Therefore, clarification of designated fishing areas was relevant to any discussion of equitable fish allocation since, as alleged in the RFD, allocation concerns where the fish may be harvested. Moreover, there is no indication that appellants sought additional time for preparation from the district court; the schedule for briefing and hearing of the motions was set by pretrial order without objection.[3]
 III. Summary Judgment Against Swinomish
 FF 6 states:
 6. The usual and accustomed fishing places of the Swinomish Tribal Community include the Skagit River and its tributaries, the Samish River and its tributaries and the marine areas of northern Puget Sound from the Fraser River south to and including Whidbey, Camano, Fidalgo, Guemes, Samish, Cypress and the San Juan Islands, and including Bellingham Bay and Hale Passage adjacent to Lummi Island.
 Decision II, 459 F.Supp. at 1049 (emphasis added). The district court interpreted this finding to exclude waters in Area 10 because the southern tip of Whidbey Island, the southernmost land point named, lies seven miles north of the northernmost part of Area 10.[4]
 Swinomish argues that because FF 6 describes "marine areas" surrounding Whidbey Island, Judge Boldt intended that some portion of the northern part of Area 10, though not all of it, be within its usual and accustomed fishing places. There is no evidence to support that assertion and we agree with the district court's determination that when the decree refers to "marine areas ... south to and including Whidbey ... Island[ ]," it does not include a marine area seven miles south of Whidbey Island. While Swinomish argues that Muckleshoot has not met its burden in establishing that Area 10 (or a portion of it) is not a "marine area" of Whidbey Island, Swinomish offered no evidence that suggests that FF 6 is ambiguous or that the court intended something other than its apparent meaning when it rendered Decision I. Accordingly, we agree with the district court that "marine areas of northern Puget Sound ... south to and including Whidbey Island" does not include any portion of Area 10.[5]
 IV. Summary Judgment Against Lummi
 FF 46 states in relevant part:
 In addition to the reef net locations listed above, the usual and accustomed fishing places of the Lummi Indians at treaty times included the marine areas of Northern Puget Sound from the Fraser River south to the present environs of Seattle, and particularly Bellingham Bay.
 Decision I, 384 F.Supp. at 360 (emphasis added).[6]
 The district court correctly determined that "the key to resolving the controversy lies in determining what Judge Boldt meant in precise geographic terms by his use of the phrase 'the present environs of Seattle.' " Because the phrase derives from Dr. Barbara Lane's "Anthropological Report on the Identity, Treaty Status, and Fisheries of the Lummi Indian Tribe" and that report was cited and heavily relied upon by Judge Boldt in his decision, the court concluded that in adopting Dr. Lane's language, Judge Boldt also meant to adopt Dr. Lane's intended meaning. That meaning, however, was not articulated by Dr. Lane until her deposition taken by the parties in August 1995. In her deposition, Dr. Lane testified that she was referring to a location no farther south than present-day Mukilteo. The district court concluded that it was Judge Boldt's specific intent to rely on Dr. Lane's research and sources and that he adopted Dr. Lane's words with her intended meaning.
 Lummi contends that Dr. Lane's latter-day testimony is extraneous to the decree and the underlying record and that its admission was error. We agree.
 When interpreting an ambiguous prior judgment, the reviewing court should "construe a judgment so as to give effect to the intention of the issuing court." Narramore v. United States, 852 F.2d 485, 490 (9th Cir.1988). "[W]here the judgment is ambiguous or fails to express the rulings with clarity, the entire record before the issuing court and the findings of fact may be referenced in determining what was decided." United States v. Angle, 760 F.Supp. 1366, 1371-72 n. 4 (E.D.Cal.1991), rev'd on other grounds, 7 F.3d 891 (9th Cir.1993). The district court recognized this in its pretrial order: "[T]he only relevant evidence is that which was considered by Judge Boldt when he made his finding."
 The phrase "present environs of Seattle" is ambiguous in the sense that it is not precise as to the exact location of the environs of Seattle in 1972. Neither Decision I nor Decision II defines or clarifies it. Dr. Lane's report in the record of the earlier proceedings is equally unhelpful. It may well be that, had Dr. Lane offered a definition of the phrase in those proceedings-it is undisputed that she did not-Judge Boldt would have accepted it. But to treat the definition of the phrase first articulated by Dr. Lane in her August 1995 deposition as having been adopted by Judge Boldt in 1972 is pure speculation. Accordingly, the district court erred by considering Dr. Lane's latter-day testimony as evidence of Judge Boldt's intended meaning.
 As an alternative ground for its decision, the district court relied on the continuing jurisdiction reserved in the decree to "determine the location of a tribe's usual and accustomed fishing grounds not specifically determined by [Decision I ]" and "such other matters as the Court may deem appropriate." Decision I, 384 F.Supp. at 419. If FF 46 cannot be clarified by adopting Dr. Lane's definition of "present environs of Seattle," the court reasoned, the meaning of the phrase was not "specifically determined" by Decision I. The court then proceeded to determine the proper interpretation of the phrase. It concluded that the only authority capable of clarifying the meaning of that phrase is Dr. Lane and based on her testimony, the court made a supplemental finding that the phrase "to the present environs of Seattle" as used in FF 46 describes an area extending no farther south than Mukilteo.
 Although jurisdiction to enter supplemental findings exists under the decree, we find the district court erred in entering a supplemental finding here because the court failed to allow all parties to present evidence. Decision I acknowledged that "it would be impossible to compile a complete inventory of any tribe's usual and accustomed fishing grounds and stations." Id. at 353. At the same time, subparagraph f of Paragraph 25 reserved continuing jurisdiction to determine "the location of a tribe's usual and accustomed fishing grounds not specifically determined in [Decision I ]." Id. at 419. Judge Boldt, however, did "specifically determine[ ]" the location of Lummi's usual and accustomed fishing grounds, albeit using a description that has turned out to be ambiguous. Subparagraph f does not authorize the court to clarify the meaning of terms used in the decree or to resolve an ambiguity with supplemental findings which alter, amend or enlarge upon the description in the decree. Moreover, the issues presented in subproceeding 86-5 did not comprehend new determinations of locations of usual and accustomed fishing grounds. A proceeding under subparagraph f raises issues beyond those defined in the pretrial order which rejected any submissions from Lummi involving additional research in this subproceeding: "[T]he only matter at issue is the meaning of Judge Boldt's Finding No. 46 and the only relevant evidence is that which was considered by Judge Boldt when he made his finding." Nor do we read subparagraph g-"such other matters as the court may deem appropriate"-to grant blanket authority to make such supplemental findings. Therefore we find that the district court's alternative ground cannot be upheld.
 Nevertheless, we recognize that the district court has a genuine controversy before it that must be resolved. We instruct the district court to proceed pursuant to Paragraph 25, subparagraph a to resolve this dispute. Subparagraph a vests continuing jurisdiction to determine "whether or not the actions ... by any party ... are in conformity with [Decision I ] of this injunction." 384 F.Supp. at 419. The RFD, and subsequent proceedings under it, present the court with a dispute over whether the southern portion of the areas in which the Lummi are currently taking fish is in conformity with the decree. It will be up to the parties to offer admissible evidence to enable the district court to interpret the decree in specific geographic terms. While evidence that was before Judge Boldt when he made his finding is obviously relevant, there may be other evidence indicative of the contemporary understanding of "the present environs of Seattle."
 CONCLUSION
 The judgment is AFFIRMED as to Swinomish and REVERSED as to Lummi, and the matter is REMANDED for further proceedings consistent with this opinion. Each party to bear its own costs.
 O'SCANNLAIN, Circuit Judge, concurring in part and dissenting in part.
 I would affirm the judgment of the district court. I agree with the majority that the district court properly granted summary judgment against Swinomish. Regrettably, however, I cannot join Part IV of the majority's opinion, which reverses the district court's grant of summary judgment against Lummi. In my view, the district court was correct to consider the testimony of Dr. Barbara Lane in determining the meaning of the phrase "present environs of Seattle." United States v. Washington, 384 F.Supp. 312, 360 (W.D.Wash.1974) (Boldt, J.). Therefore, I respectfully dissent.
 
 
 1
 The district court granted summary judgment against Lummi on the ground that Lummi's fishing locations, as described in Finding of Fact 46 in United States v. Washington, did not include waters in Area 10. Finding of Fact 46 states, in pertinent part:
 
 
 2
 In addition to the reef net locations listed above, the usual and accustomed fishing places of the Lummi Indians at treaty times included the marine areas of Northern Puget Sound from the Fraser River south to the present environs of Seattle, and particularly Bellingham Bay.
 
 
 3
 Id. (emphasis added).
 
 
 4
 The phrase "present environs of Seattle" derives from Dr. Barbara Lane's "Anthropological Report on the Identity, Treaty Status, and Fisheries of the Lummi Indian Tribe," which was heavily relied upon by Judge Boldt in his 1974 decision. In a 1995 deposition, Dr. Lane testified that, in using the phrase "present environs of Seattle" in her report, she meant to refer to an area no farther south than Mukilteo, which is north of Area 10. Accordingly, relying on Dr. Lane's 1995 testimony, the district court concluded that the "present environs of Seattle" did not extend as far south as Area 10. The majority concludes that Judge Rothstein erred in relying on Dr. Lane's 1995 testimony in determining the meaning of the phrase "present environs of Seattle." See Majority Opinion at 3609.
 
 
 5
 The meaning of "present environs of Seattle" in Finding of Fact 46 is ambiguous. As the majority correctly observes, " 'where the judgment is ambiguous or fails to express the rulings with clarity, the entire record before the issuing court and the findings of fact may be referenced in determining what was decided.' " Majority Opinion at 3608 (emphasis added) (quoting United States v. Angle, 760 F.Supp. 1366, 1371-72 n. 4 (E.D.Cal.1991), rev'd on other grounds, 7 F.3d 891 (9th Cir.1993)).
 
 
 6
 In this case, "the entire record before [Judge Boldt]" included Dr. Lane's "Anthropological Report on the Identity, Treaty Status, and Fisheries of the Lummi Indian Tribe." Dr. Lane's report is the source of the phrase "present environs of Seattle." However, Dr. Lane's report does not define that phrase.
 
 
 7
 When a piece of "the entire record before [an] issuing court," Angle, 760 F.Supp. at 1371-72 n. 4, appears ambiguous to a reviewing court faced with the task of interpreting the issuing court's judgment, the reviewing court must be permitted to rely on the testimony of witnesses who can testify as to what that piece of the record means.[1] Dr. Lane's 1995 testimony concerned what she meant by "present environs of Seattle" when she wrote that phrase in a report relied upon by Judge Boldt in his 1974 decision. See Majority Opinion at 3609. It did not concern what Dr. Lane means by that phrase today. Accordingly, the district court did not err in considering Dr. Lane's testimony in interpreting the phrase "present environs of Seattle."
 
 
 8
 I respectfully dissent.
 
 
 
 *
 Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 [1]
 Area 10 is a marine area defined by the Washington Department of Fish and Wildlife, which refers to an administrative salmon management and catch reporting area described in the Washington Administrative Code. It includes the waters of Puget Sound bordering metropolitan Seattle. The boundary on the North is roughly the Edmonds-Kingston ferry lane, on the South, a line from South Seattle to Southworth on the Kitsap Peninsula. There is no direct correlation or legal connection between boundaries defining these administrative catch areas and the parameters of "usual and accustomed fishing grounds and stations" described in Decision I or subsequent litigation. The boundaries defining these administrative catch areas are not immutable in the sense that they can be changed by the state in consultation with treaty tribes in light of new biological data
 
 
 [2]
 Paragraph 25(b)(3) (as modified by Order of August 11, 1993) provides that to invoke the court's continuing jurisdiction, "a party seeking relief shall file ... a 'request for determination,' ... setting forth the factual and legal basis of the claim for relief ... and a statement of the relief sought by the requesting party."
 
 
 [3]
 In its reply brief Swinomish makes the conclusory assertion that "neither Muckleshoot nor Swinomish was able to adequately review the record before Judge Boldt in order to offer clarifying evidence regarding the location of the southern boundary to Swinomish adjudicated U & A area." It does not appear that this claim was raised below, much less that a request for time was made, and its generality undermines its persuasiveness
 
 
 [4]
 The court may take judicial notice of undisputed geographical facts. See, e.g., United States v. Trenary, 473 F.2d 680, 682 (9th Cir.1973) (allowing judicial notice of map to determine geographical distance)
 
 
 [5]
 Swinomish offered anthropological reports by Dr. Barbara Lane and Dr. Sally Snyder and an affidavit by Dr. Astrida Onat in its response to Muckleshoot's motion. In addition to being outside the record before Judge Boldt at the time he issued his decision, the reports and affidavit address Swinomish treaty-time fishing areas and do not address Judge Boldt's intended meaning of the term "marine areas" or help to interpret the description in FF 6 in general, which is the narrow issue here
 
 
 [6]
 Lummi's assertion that Muckleshoot's partial summary judgment motion is barred by res judicata or the law of the case doctrine is inapposite. Muckleshoot's motion did not propose to relitigate issues finally determined by the decrees but sought only clarification of two findings in Decision I and Decision II. Although Muckleshoot's proffered interpretation may change the present application of the specified portions of the decree, the motion did not attempt to change the terms of the decree or challenge its finality or validity
 
 
 [1]
 For example, if an issuing court relied on a particular map, a reviewing court interpreting the issuing court's judgment should be permitted to rely on the present-day testimony of the cartographer who designed the map in determining how the map should be interpreted