FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MUCKLESHOOT INDIAN TRIBE, *Plaintiff-Appellant*, | No. 18-35441 |
| v. | D.C. No. 2:17-sp-00002-RSM |
| TULALIP TRIBES; SUQUAMISH TRIBE; PUYALLUP TRIBE; SQUAXIN ISLAND TRIBE, of the Squaxin Island Reservation; NISQUALLY TRIBE; SWINOMISH INDIAN TRIBAL COMMUNITY; STATE OF WASHINGTON; JAMESTOWN S'KLALLAM TRIBE; PORT GAMBLE S'KLALLAM TRIBE; SKOKOMISH INDIAN TRIBE, *Respondents-Appellees*, | OPINION |
| and | |
| HOH INDIAN TRIBE; LUMMI INDIAN NATION; QUILEUTE INDIAN TRIBE; QUINAULT INDIAN NATION; STILLAGUAMISH TRIBE OF INDIANS; SAUK-SUIATTLE INDIAN TRIBE, *Real-Parties-in-Interest*. | |

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, District Judge, Presiding

Argued and Submitted October 22, 2019
Seattle, Washington

Filed December 18, 2019

Before:  Richard R. Clifton and Sandra S. Ikuta, Circuit
Judges, and Jed S. Rakoff,[*] District Judge.

Opinion by Judge Rakoff;
Dissent by Judge Ikuta

## SUMMARY[**]

**Tribal Matters / Fishing Rights**

The panel affirmed the district court's dismissal due to
lack of jurisdiction of a subproceeding brought by
Muckleshoot Indian Tribe concerning usual and accustomed
fishing grounds and stations ("U&As") in western
Washington established under the "Stevens Treaties."

In *United States v. Washington (Final Decision #1)*, 384
F. Supp. 312, 330 (W.D. Wash. 1974), *aff'd and remanded*,
520 F.2d 676 (9th Cir. 1975), Judge Boldt made detailed
findings of facts and conclusions of law defining the U&As,
and issued a permanent injunction that retained jurisdiction
in implementing the decision's decree.

---

[*] The Honorable Jed S. Rakoff, United States District Judge for the
Southern District of New York, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It
has been prepared by court staff for the convenience of the reader.

In *Muckleshoot Tribe v. Lummi Indian Tribe*, 141 F.3d 1355, 1359–60 (9th Cir. 1998) ("*Muckleshoot 1*"), the Court held that where a tribe's U&As have been "specifically determined" in *Final Decision #1*, continuing jurisdiction under the permanent injunction resides only in Paragraph 25(a)(1).     In Subproceeding 97-1, this Court affirmed District Judge Rothstein's holding that the Muckleshoot's saltwater U&As were limited to Elliot Bay. *United States v. Muckleshoot Indian Tribe*, 235 F.3d 429, 438 (9th Cir. 2000).   In Subproceeding 17-2 at issue in this case, the Muckleshoot sought under Paragraph 25(a)(6) to expand their U&As to certain areas of Puget Sound beyond Elliot Bay.

The panel noted that in order for a tribe to bring an action under Paragraph 25(a)(6), the U&A at issue must have not been "specifically determined" by *Final Decision #1*.  As a threshold issue, the panel held that the district court properly held that Muckleshoot's saltwater U&As in Puget Sound had already been "specifically determined" in their entirety by Judge Boldt, and accordingly, there was no continuing jurisdiction under Paragraph 25(a)(6) to entertain the present subproceeding.   The panel did not reach the other issues raised on appeal.

Dissenting, Judge Ikuta stated that the majority's opinion frustrated Judge Boldt's rulings in *Final Decision #1* that his specific determinations were not comprehensive, and that tribes could invoke the court's continuing jurisdiction to determine additional U&A fishing locations.

## COUNSEL

David R. West (argued), Donald B. Scaramastra, and Margaret A. Duncan, Garvey Schubert Barer, P.C., Seattle, Washington; Richard Reich, Robert L. Otsea, Jr., Laura Weeks, and Ann E. Tweedy, Office of the Tribal Attorney, Muckleshoot Indian Tribe, Auburn, Washington; for Plaintiff-Appellant.

Mason D. Morisset, Morisset, Schlosser, Jozwiak, and Somerville, Seattle, Washington, for Respondent-Appellee Tulalip Tribes.

John W. Ogan (argued), Law Office of John W. Ogan, Sisters, Oregon; James Rittenhouse Bellis, Office of Suquamish Tribal Attorney, Suquamish, Washington; for Respondent-Appellee Suquamish Indian Tribe.

Samuel J. Stiltner and John Howard Bell, Law Office, Puyallup Tribe, Tacoma, Washington, for Respondent-Appellee Puyallup Tribe.

Sharon Haensly, David Babcock, and Kevin Lyon, Squaxin Island Legal Department, Shelton, Washington, for Respondent-Appellee Squaxin Island Tribe.

Jay J. Manning and Meghan E. Gavin, Cascadia Law Group PLLC, Olympia, Washington, for Respondent-Appellee Nisqually Indian Tribe.

James M. Jannetta and Emily Haley, Office of the Tribal Attorney, La Conner, Washington, for Respondent-Appellee Swinomish Indian Tribal Community.

Michael S. Grossmann and Joseph V. Panesko, Assistant Attorneys General; Office of the Washington Attorney General, Olympia, Washington; for Respondent-Appellee State of Washington.

Lauren Rasmussen (argued), Law Offices of Lauren Rasmussen, Seattle, Washington, for Respondents-Appellees Jamestown S'Klallam Tribe and Port Gamble S'Klallam Tribe.

Earle David Lees, III, Skokomish Indian Tribe, Shelton, Washington, for Respondent-Appellee Skokomish Indian Tribe.

Craig J. Dorsay and Lea Ann Easton, Dorsay & Easton LLP, Portland, Oregon, for Real-Party-in-Interest Hoh Indian Tribe.

Mary Michelle Neil, Lummi Indian Nation, Office of the Reservation Attorney, Bellingham, Washington, for Real-Party-in-Interest Lummi Indian Nation.

Lauren J. King, Attorney, Foster Pepper PLLC, Seattle, Washington, for Real-Party-in-Interest Quileute Indian Tribe.

Eric J. Nielsen, Counsel, Nielsen, Broman & Koch PLLC, Seattle, Washington, for Real-Party-in-Interest Quinault Indian Nation.

Scott Mannakee, Stillaguamish Tribe of Indians, Arlington, Washington; Rob Roy Smith, Kilpatrick Townsend & Stockton, LLP, Seattle, Washington; for Real-Party-in-Interest Stillaguamish Tribe of Indians.

Jack Warren Fiander and Elmer Jerome Ward, Sauk-Suiattle Indian Tribe, Office of Legal Counsel, Darrington, Washington, for Real-Party-in-Interest Sauk-Suiattle Indian Tribe.

**OPINION**

RAKOFF, District Judge:

In the 1850s, Isaac Stevens, then-Governor and Superintendent of Indian Affairs of the Washington Territory, executed eleven treaties with Indian tribes in an area that later became part of the State of Washington. *See Washington v. Washington State Commercial Passenger Fishing Vessel Ass'n*, 443 U.S. 658, 666 (1979); *United States v. Washington*, 384 F. Supp. 312, 330 (W.D. Wash. 1974) ("*Final Decision # I*"), *aff'd and remanded*, 520 F.2d 676 (9th Cir. 1975). Under these so-called "Stevens Treaties," each tribe ceded its lands in exchange for securing a small reservation and the right to take fish "in common with" others at its "usual and accustomed" fishing grounds and stations ("U&As").

In September 1970, the United States, on its own behalf and as trustee for several Western Washington Indian tribes (later joined by additional Indian tribes as intervenor plaintiffs), filed a complaint against the State of Washington to enforce these treaty fishing rights. *See Final Decision # I*, 384 F. Supp. at 327–28. In February 1974, after the parties had spent more than three years in exhaustive discovery in the fields of anthropology, history, biology, fishery management, and other areas of expertise, followed by a three-week trial before the Hon. George H. Boldt of the U.S. District Court for the Western District of Washington, Judge

Boldt issued *Final Decision # I*, which encompassed 253 detailed findings of facts and 48 conclusions of law.

*Final Decision # I* defined U&As as "every fishing location where members of a tribe customarily fished from time to time at and before treaty times, however distant from the then usual habitat of the tribe, and whether or not other tribes then also fished in the same waters[.]" *Id.* at 332. As to the Muckleshoot Indian Tribe, *Final Decision # I* stated as follows:

> 76. Prior to and during treaty times, the Indian ancestors of the present day Muckleshoot Indians had usual and accustomed fishing places primarily at locations on the upper Puyallup, the Carbon, Stuck, White, Green, Cedar and Black Rivers, the tributaries to these rivers (including Soos Creek, Burns Creek and Newaukum Creek) and Lake Washington, and secondarily in the saltwater of Puget Sound.

*Id.* at 367 (citations omitted).

In rendering his historic decision, Judge Boldt clarified that, although *Final Decision # I* tried to resolve "as many as possible of the divisive problems of treaty right fishing," it "set forth information regarding . . . some, but by no means all, of [plaintiff tribes'] principal usual and accustomed fishing places." *Id.* at 330, 333. This was because it was "impossible to compile a complete inventory of any tribe's usual and accustomed grounds and stations" at that time. *Id.* at 353; *see also id.* at 402.

Anticipating that because of these gaps the decree might face future challenges, *Final Decision # I* included a permanent injunction that retained jurisdiction in implementing the decree. *See id.* at 408. Specifically, Paragraph 25 of the permanent injunction identifies various kinds of "subproceedings" that a party may bring to seek further rulings within *United States v. Washington*. *See id.* at 419. The case now before the Court, Subproceeding 17-2, is one such subproceeding. Specifically, the Muckleshoot seek to expand their U&As to certain areas of Puget Sound beyond Elliott Bay.

As relevant here, Paragraph 25(a)(1) of the permanent injunction[1] provides for jurisdiction over determinations of "whether or not the actions, intended or effected by any party . . . are in conformity with Final Decision #I or this injunction." *Id.* By contrast, Paragraph 25(a)(6) of the permanent injunction provides the district court with jurisdiction over a tribe's request to decide "the location of any of a tribe's usual and accustomed fishing grounds not specifically determined by Final Decision #I." *Id.*

In 1998, this Court issued an opinion in *Muckleshoot Tribe v. Lummi Indian Tribe*, holding that, where a tribe's U&As have been "specifically determined" in *Final Decision # I*, continuing jurisdiction under the permanent injunction resides only in Paragraph 25(a)(1), not Paragraph 25(a)(6). 141 F.3d 1355, 1359–60 (9th Cir. 1998) ("*Muckleshoot I*"). This Court further held that in such circumstances, the district court's task was to "give effect to

---

[1] In 1993, without any changes to each provision's substantive content, original Paragraph 25(a) was redenominated as current Paragraph 25(a)(1), and original Paragraph 25(f) was redenominated as current Paragraph 25(a)(6).

the intention of the issuing court [(*i.e.*, Judge Boldt)]" by reviewing "the entire record before the issuing court and the findings of fact . . . in determining what was decided." *Id.* at 1359 (citations omitted). By contrast, the district court was forbidden to consider new evidence in making supplemental findings that "alter, amend or enlarge upon the description in the decree." *Id.* at 1360.

In 1997, the Puyallup Tribe, the Suquamish Tribe, and the Swinomish Tribe brought Subproceeding 97-1, seeking a determination that the Muckleshoot had no saltwater U&As outside the Elliott Bay part of Puget Sound. *See United States v. Washington*, 19 F. Supp. 3d 1252, 1272 (W.D. Wash. 1999) ("Subproceeding 97-1"). The main issue in Subproceeding 97-1, as framed by the district court, was "whether Judge Boldt intended to designate a saltwater fishery for the Muckleshoot and, if so, what areas he intended 'secondarily in the saltwater of Puget Sound' to encompass." *Id.* at 1305. After extensive proceedings, District Judge Barbara J. Rothstein held that the Muckleshoot's saltwater U&As were limited to Elliott Bay. *See id.* at 1311. This Court affirmed the district court's decision. *See United States v. Muckleshoot Indian Tribe*, 235 F.3d 429, 438 (9th Cir. 2000).

The Muckleshoot brought the instant subproceeding in the district court (Hon. Ricardo S. Martinez) on July 13, 2017. Relying on Paragraph 25(a)(6), the Muckleshoot seek to obtain additional U&As in the saltwater of Puget Sound beyond Elliott Bay.[2]

---

[2] To be more precise, the Muckleshoot seek: "All of the marine waters of Puget Sound to and including the waters in the vicinity of Gedney (aka Hat) Island and the southern end of Whidbey Island in the

The Jamestown S'Klallam Tribe, the Port Gamble S'Klallam Tribe, the Swinomish Tribe, and the Tulalip Tribe jointly filed a motion to dismiss the instant subproceeding under Fed. R. Civ. P. 12(b)(1), arguing that the district court lacked subject matter jurisdiction because the scope of the Muckleshoot's U&As in the saltwater of Puget Sound had been specifically determined by Judge Boldt. The Suquamish Tribe, joined separately by the Squaxin Island Tribe and the Puyallup Tribe, filed a motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).**[3]**

The district court granted the motions to dismiss for two reasons. First, "Judge Boldt [had] specifically determined Muckleshoot U&A in [*Final Decision # I*], and therefore there [was] no continuing jurisdiction under [Paragraph 25(a)(6)]." Second, the Muckleshoot tribe was "collaterally estopped from relitigating its previously-adjudicated U&A in [Subproceeding 97-1]." This appeal followed.

We have jurisdiction pursuant to 28 U.S.C. § 1291. Ordinarily, "[w]e review a dismissal for lack of subject matter jurisdiction *de novo*." *Prather v. AT&T, Inc.*, 847 F.3d 1097, 1102 (9th Cir. 2017), *cert. denied*, 137 S. Ct. 2309 (2017). In the present case, the district court found lack of subject matter jurisdiction based on its interpretation of a prior judicial decree. In such case, "[t]he district court's interpretation of a judicial decree is also reviewed *de novo*,

---

north, to and including the marine waters around Anderson, Fox and McNeil Islands in the south, and all of the marine waters of Puget Sound between those areas, but excluding Colvos Passage and marine waters within the boundaries of any Indian Reservation."

**[3]** Relatedly, the Sauk-Suiattle Indian Tribe filed a motion for leave to file a brief as an interested party. That motion is **GRANTED**, and the Court has considered the accompanying brief.

although this court typically gives deference to the district court's interpretation based on the court's extensive oversight of the decree from the commencement of the litigation to the current appeal." *United States v. Walker River Irrigation Dist.*, 890 F.3d 1161, 1169 (9th Cir. 2018) (internal citation, quotations, and alterations omitted).

## Discussion

In order for a tribe to bring an action under Paragraph 25(a)(6), the U&A at issue must not have been "specifically determined" by *Final Decision # I. See Final Decision # I*, 384 F. Supp. at 419; *Muckleshoot I*, 141 F.3d at 1359–60. Therefore, the threshold issue in this appeal is whether the district court erred in holding that the Muckleshoot's saltwater U&As in Puget Sound had already been "specifically determined" by Judge Boldt. Because we agree with the district court that Judge Boldt had determined the entirety of the Muckleshoot's saltwater U&As, we do not reach other issues raised on appeal.[4]

At the motion to dismiss stage of Subproceeding 97-1, Judge Rothstein held that there was no jurisdictional basis to entertain the three tribes' claims regarding Muckleshoot's U&As in Puget Sound under Paragraph 25(a)(6):

> Here, as in [*Muckleshoot I*], Judge Boldt has already made a finding of fact determining the location of Muckleshoot's U & A. Although his determination may have turned

---

[4] Other issues raised on appeal include whether the district court erred in holding that Subproceeding 97-1 collaterally estopped Muckleshoot from raising its claim to expand its U&As; and whether judicial estoppel prevents Muckleshoot from arguing here that its U&As were not specifically determined in that earlier subproceeding.

out to be ambiguous, he did make a specific
description. . . . Issuing a supplemental
finding under [Paragraph 25(a)(6)] defining
the scope of Muckleshoot's U & A in Puget
Sound would "alter, amend or enlarge upon"
Judge Boldt's description, contrary to the
Ninth Circuit's holding in [*Muckleshoot I*].

*Subproceeding 97-1*, 19 F. Supp. 3d at 1275–76. Later, at the
summary judgment stage of Subproceeding 97-1, Judge
Rothstein, after her extensive review of the record in front of
Judge Boldt, found as follows:

It is clear from the documents Judge Boldt
specifically cited to that the predecessors of
the Muckleshoot were a primarily upriver
people who may have, from time to time,
descended to Elliott Bay to fish and collect
shellfish there. . . . Based on this evidence,
the court concludes that Judge Boldt intended
to include [Elliott Bay] in the Muckleshoot U
& A. . . . The court finds, however, that there
is no evidence in the record before Judge
Boldt, nor is it persuaded by extra-record
evidence, that Judge Boldt intended to
describe a saltwater U&A any larger than the
open waters and shores of Elliott Bay.

*Subproceeding 97-1*, 19 F. Supp. 3d at 1310–11. These
findings were affirmed by this Court, which stated, *inter
alia*, that the "[documents before Judge Boldt] indicate that
the Muckleshoot's ancestors were almost entirely an upriver
people who primarily relied on freshwater fishing for their
livelihoods. Insofar as they conducted saltwater fishing, the
referenced documents contain no evidence indicating that

such fishing occurred with regularity anywhere beyond Elliott Bay." *United States v. Muckleshoot Indian Tribe*, 235 F.3d 429, 434 (9th Cir. 2000).

This was, or should have been, the end of the matter, as the district court here found. But the dissent suggests that Judge Rothstein somehow left a door open for the Muckleshoot to argue that they have fishing rights in Puget Sound beyond Elliott Bay because the matter was not finally determined by Judge Boldt. This misapprehends what occurred in the prior rulings. When Judge Rothstein was called upon to determine what Judge Boldt meant when he ruled that the Muckleshoot had usual and accustomed fishing places "secondarily in the saltwater of Puget Sound," she determined, as quoted above, that he had necessarily considered whether the Muckleshoot had fishing places in various parts of Puget Sound but that he had in the end concluded that such places were limited to Elliott Bay. In other words, the most reasonable reading of Judge Rothstein's findings, as quoted above, is that Judge Boldt, in referring to the Muckleshoot's fishing rights in Puget Sound, determined in effect that the only part of Puget Sound in which the Muckleshoot had any usual and accustomed fishing was "the open waters and shores of Elliott Bay." It was precisely for this reason that Judge Rothstein concluded that "[i]ssuing a supplemental finding under [Paragraph 25(a)(6)] defining the scope of Muckleshoot's U & A in *Puget Sound*" would be an impermissible attempt to contradict Judge Boldt's determination. *Subproceeding 97-1*, 19 F. Supp. 3d at 1275–76 (emphasis added).

In short, Subproceeding 97-1, as affirmed by this Court, definitively determined that the Muckleshoot's saltwater fisheries in Puget Sound had been limited by Judge Boldt to Elliott Bay. Therefore, the district court below did not err in

holding that it lacked jurisdiction under Paragraph 25(a)(6) to entertain the present subproceeding, and properly dismissed it.

**AFFIRMED.**

IKUTA, Circuit Judge, dissenting:

In *United States v. Washington* (*Final Decision #I*), Judge Boldt not only painstakingly identified some of the historical usual and accustomed (U&A) fishing locations for several Western Washington tribes, but also created a procedure through which the tribes could bring new evidence to support their claims to additional U&A fishing locations. 384 F. Supp. 312 (W.D. Wash. 1974), *aff'd and remanded*, 520 F.2d 676 (9th Cir. 1975). Because the majority thwarts Judge Boldt's elegant solution to a complex problem, I dissent.

I

In his effort to resolve "as many as possible of the divisive problems of treaty right fishing" in Western Washington, Judge Boldt had difficult decisions to make. *Id*. at 330. Because the tribes had treaty rights to fish at "all usual and accustomed grounds and stations," he had to figure out each tribe's historical U&A fishing areas. *Id*. at 332. But Judge Boldt knew that he could not define every U&A fishing location for every tribe. Compiling a "complete inventory" would be impossible. *Id*. at 353. So he made findings that defined, or "specifically determined," *id.* at 419, "some, but by no means all," of the tribes' U&A fishing locations, *id*. at 333. Given Judge Boldt's acknowledgment that it would be impossible to define each tribe's U&A

fishing locations conclusively, it is not surprising that Judge Boldt made no findings that particular locations were *not* part of a tribe's U&A fishing locations.

After making his findings (his "Specific Determinations"), Judge Boldt issued an injunction to set forth "the basic obligations of the parties, together with means for resolving future matters" in order "to guide the conduct of all parties, plaintiff and defendant." *Id.* at 413–14. Judge Boldt contemplated two types of "future matters."

First, Paragraph 25(a)(1) of the Injunction (the "Clarification Paragraph") permits tribes to ask the court to resolve any ambiguity in Judge Boldt's Specific Determinations. *Id*. at 419. Under the Clarification Paragraph, tribes can invoke the district court's continuing jurisdiction to determine "whether or not the actions, intended or effected by any party (including the party seeking a determination) are in conformity with Final Decision #I or this injunction." *Id.* By invoking the Clarification Paragraph, tribes can ask the district court to "clarify the meaning of terms used" in *Final Decision #I* so as to give effect to Judge Boldt's intent. *Muckleshoot Tribe v. Lummi Indian Tribe*, 141 F.3d 1355, 1360 (9th Cir. 1998) (*Muckleshoot I*).

Second, Paragraph 25(a)(6) of the Injunction (the "New Determinations Paragraph") provides that the tribes can invoke the continuing jurisdiction of the court to determine "the location of any of a tribe's usual and accustomed fishing grounds not specifically determined by Final Decision #I." 384 F. Supp. at 419. Because Judge Boldt understood that he could not specifically determine all the U&A fishing locations for every tribe in *Final Decision #I* itself, he included this New Determinations Paragraph to allow a tribe to invoke the court's jurisdiction to consider further evidence

showing the tribe historically fished at additional locations not included in the initial Specific Determinations. *Id*. at 353, 419.   If a district court concludes, after a proceeding under the New Determinations Paragraph, that a specific location does not qualify as a U&A fishing location for a tribe, the tribe is barred by issue preclusion from bringing a second request for a determination as to the same location. *See Janjua v. Neufeld*, 933 F.3d 1061, 1065–66 (9th Cir. 2019).

We have previously explained the significant evidentiary difference between proceedings under the Clarification Paragraph and the New Determinations Paragraph.  *See Muckleshoot I*, 141 F.3d at 1359.  When a tribe claims that a Specific Determination is ambiguous under the Clarification Paragraph, a court's only job is to discern Judge Boldt's intent.  This is because "[w]hen interpreting an ambiguous prior judgment, the reviewing court should 'construe a judgment so as to give effect to the intention of the issuing court.'"  *Id.* at 1359 (quoting *Narramore v. United States*, 852 F.2d 485, 490 (9th Cir. 1988)).  Because Judge Boldt's intent is all that matters in a proceeding under the Clarification Paragraph, only evidence relevant to that intent can be considered in such a proceeding.  *Id*. at 1360; *United States v. Washington*, 19 F. Supp. 3d 1252, 1272, 1310–11 (W.D. Wash. 1997) (*Subproceeding 97-1* or *Rothstein Decision*).

By contrast, when a tribe invokes the New Determinations Paragraph and argues that it is entitled to fishing locations that were not included in Judge Boldt's Specific Determinations, the tribe can offer any evidence— new or old—relevant to establishing that the tribe historically fished in those areas.  *See Muckleshoot I*, 141

F.3d at 1360.   Based on this evidence, the court may specifically determine additional U&A fishing locations.

## II

In this case, the Muckleshoot tribe is bringing a claim under the New Determinations Paragraph.  To understand the claim, it is necessary to provide some background.

In Paragraph 76 of *Final Decision #I*, Judge Boldt made a Specific Determination regarding the Muckleshoot's U&A fishing locations:

> 76. Prior to and during treaty times, the Indian ancestors of the present day Muckleshoot Indians had usual and accustomed fishing places primarily at locations on the upper Puyallup, the Carbon, Stuck, White, Green, Cedar and Black Rivers, the tributaries to these rivers (including Soos Creek, Burns Creek and Newaukum Creek) and Lake Washington, *and secondarily in the saltwater of Puget Sound*. Villages and weir sites were often located together.

*Final Decision #I*, 384 F. Supp. at 367 (emphasis added).

In a proceeding before Judge Rothstein, who had taken over hearing claims arising under *Final Decision #I* from Judge Boldt, the Muckleshoot pointed to the language in Paragraph 76 providing that the tribe had U&A fishing locations "secondarily in the saltwater of Puget Sound." *See Rothstein Decision*, 19 F. Supp. 3d at 1272.   The Muckleshoot contended that this broad language constituted a Specific Determination that the Muckleshoot's U&A

fishing locations encompassed all of Puget Sound, including locations designated as Areas 9, 10, and 11. *Id*. at 1274. Three other tribes argued that the phrase "secondarily in the saltwater of Puget Sound" was ambiguous, and the Muckleshoot did not "have fishing rights in Areas 10, 11 and points beyond" in Puget Sound. *Id*. at 1273–74.

Because *Final Decision #I*, on its face, set out a broad Specific Determination covering all of Puget Sound, the Muckleshoot tribe had to proceed under the Clarification Paragraph and could not invoke the New Determinations Paragraph. *See Muckleshoot I*, 141 F.3d at 1360. This is because the New Determinations Paragraph "does not authorize the court to clarify the meaning of terms used in [*Final Decision #I*] or to resolve an ambiguity with supplemental findings which alter, amend or enlarge upon the description in the decree." *Id*. As both Judge Rothstein and the Muckleshoot agreed, only the Clarification Paragraph permitted Judge Rothstein to construe the scope of the Specific Determination relating to Puget Sound. *Rothstein Decision*, 19 F. Supp. 3d at 1273–75.

Proceeding under the Clarification Paragraph, Judge Rothstein first determined that the terms "Puget Sound" and "secondarily" were ambiguous. *Id.* at 1274. To interpret Judge Boldt's intent in using these terms, Judge Rothstein held that she could consider "evidence before Judge Boldt when he made his finding," and evidence "indicative of the contemporary understanding" of the phrase "secondarily in the saltwater of Puget Sound." *Id.* at 1275. In other words, she could consider evidence relevant to what "Judge Boldt intended." *Id*. at 1311.

After an evidentiary hearing, considering only that evidence, Judge Rothstein determined that Judge Boldt intended the phrase "secondarily in the saltwater of Puget

Sound" to mean "Elliott Bay." *Id.* at 1275. In other words, under Judge Rothstein's construction of *Final Decision #I*, Paragraph 76 can no longer be read as stating that "the Muckleshoot Indians had usual and accustomed fishing places . . . secondarily in the saltwater of Puget Sound." Instead, Paragraph 76 must be read as stating that "the Muckleshoot Indians had usual and accustomed fishing places" in Elliott Bay. In her opinion, Judge Rothstein did not make any finding that areas *outside* of Elliott Bay were *not* part of the Muckleshoot's U&A fishing locations. This makes sense, given that Judge Rothstein was merely trying to discern Judge Boldt's intent, and Judge Boldt had not made findings that any locations were *not* part of a tribe's U&A fishing locations.

In 2018, after Judge Martinez had taken over for Judge Rothstein, the Muckleshoot asked the district court to consider its claims to U&A fishing locations outside Elliott Bay under the New Determinations Paragraph. *United States v. Washington*, 2018 WL 1933718, at \*5 (W.D. Wash. April 24, 2018). The Muckleshoot offered new evidence, not relating to Judge Boldt's intent, which the Muckleshoot claimed showed that various areas within Puget Sound were historically Muckleshoot U&A fishing locations.

Judge Martinez rejected the Muckleshoot's request for a determination under the New Determinations Paragraph. He reasoned that because *Final Decision #I* stated that the Muckleshoot had U&A fishing locations "secondarily in the saltwater of Puget Sound," the court had no authority to "alter, amend or enlarge" that Specific Determination under the New Determinations Paragraph. *Id.* at \*6–7. Judge Martinez therefore dismissed the case for lack of jurisdiction. *Id*. at 7.

III

In reaching this conclusion, Judge Martinez erred, and the majority errs in affirming it.

Judge Martinez was correct that the New Determinations Paragraph does not authorize a court to clarify or expand a Specific Determination, even if that determination is broad and ambiguous. *Muckleshoot I*, 141 F.3d at 1360. But after Judge Rothstein's decision, *Final Decision #I* specifically determined only that Elliott Bay is a U&A fishing location for the Muckleshoot; there was no longer a Specific Determination addressing Puget Sound as a whole. Therefore, the Muckleshoot were entitled to request a new Specific Determination under the New Determinations Paragraph relating to areas in Puget Sound outside of Elliott Bay.

By rejecting the Muckleshoot's request to consider this issue under the New Determinations Paragraph, Judge Martinez's decision was both unfair to the Muckleshoot tribe and contrary to *Final Decision #I*. It is manifestly unfair for a court to rule that the Muckleshoot tribe has no U&A fishing locations outside Elliott Bay without considering all of the tribe's evidence. While Judge Rothstein considered only evidence of Judge Boldt's intent in her proceeding under the Clarification Paragraph, the Muckleshoot tribe claims it has additional historical evidence showing it had U&A fishing locations outside Elliott Bay in Puget Sound. Such evidence is admissible in a hearing under the New Determinations Paragraph. By denying the Muckleshoot's request for such a hearing, Judge Martinez effectively determined that the tribe did not have any additional U&A fishing locations in Puget Sound without reviewing all the admissible evidence. This is contrary to *Final Decision #I*, which expressly allows tribes to request additional

determinations regarding their U&A fishing locations under the New Determinations Paragraph.

*Muckleshoot I* is not to the contrary, because it did not address what happens after a Clarification Paragraph proceeding alters a Specific Determination. *Muckleshoot I* involved a situation similar to the proceeding before Judge Rothstein. In *Muckleshoot I*, the district court considered a Specific Determination stating that a tribe had a U&A fishing location "from the Fraser River south to the present environs of Seattle." 141 F.3d at 1359. Various tribes disputed the meaning of "the present environs of Seattle." *Id*. We held that because Judge Boldt had made a broad Specific Determination, the district court had to proceed under the Clarification Paragraph and determine "what Judge Boldt meant in precise geographic terms by his use of the phrase 'the present environs of Seattle.'" *Id*. at 1360. We also held that the district court erred in finding (under the New Determinations Paragraph) that the phrase "the present environs of Seattle" described an area extending no farther south than Mukilteo, because a court cannot use that paragraph to clarify a Specific Determination. *Id.* Moreover, we held it would be improper for the district court to make any new determination, given that the court had "failed to allow all parties to present evidence" regarding that issue. *Id*. We remanded the case to allow the court to proceed under the Clarification Paragraph to determine what Judge Boldt meant when he used the phrase "the present environs of Seattle." *Id*.

We did not, however, address what would happen after the court interpreted "the present environs of Seattle." And based on the logic of *Muckleshoot I*, if the district court on remand interpreted Judge Boldt's phrase "the present environs of Seattle" narrowly (for example, to mean "a

location no farther south than present-day Mukilteo," *id.* at 1359), nothing in *Muckleshoot I* would preclude the tribe from invoking the New Determinations Paragraph and offering evidence that other areas in the broader "present environs of Seattle" were U&A fishing locations of that tribe.

The same logic applies here.  Therefore, Judge Martinez erred in refusing to allow the Muckleshoot to invoke the New Determinations Paragraph and in refusing to consider the tribe's new evidence as to locations within Puget Sound that were not "specifically determined" in *Final Decision #I. See* 384 F. Supp. at 419.

In holding otherwise, the majority fails to grapple with the unprecedented procedural posture of this case, which arose after a proceeding under the Clarification Paragraph. Instead, its analysis of the Muckleshoot's argument rests on two errors.

First, the majority fails to recognize the limited scope of decisions made in a proceeding under the Clarification Paragraph.  The majority mischaracterizes Judge Rothstein's decision as holding that Judge Boldt made a Specific Determination *excluding* all areas in Puget Sound except for Elliott Bay from the Muckleshoot's U&A fishing locations. Maj. at 13.  But Judge Rothstein did not, and could not, make such a finding.  Under the Clarification Paragraph, Judge Rothstein could consider only Judge Boldt's intent in making Specific Determinations.  And Judge Rothstein's ruling, quoted by the majority, speaks only of Judge Boldt's intent to include, not exclude, particular locations. *See* Maj. at 12 ("Based on this evidence, the court concludes that Judge Boldt *intended to include* [Elliott Bay] in the Muckleshoot U & A. . . . The court finds, however, that there is no evidence in the record before Judge Boldt, nor is it

persuaded by extra-record evidence, that Judge Boldt intended to describe a saltwater U&A any larger than the open waters and shores of Elliott Bay.") (quoting *Rothstein Decision*, 19 F. Supp. 3d at 1310-11) (emphasis added). Judge Boldt's intent to include only Elliott Bay as a U&A location, based on the evidence then before him, does not raise the inference that Judge Boldt intended to exclude other areas of Puget Sound from consideration under the New Determinations Paragraph. Any such finding would have been directly contrary to *Final Decision #I*, given that Judge Boldt excluded no locations from any tribe's U&A and expressly laid out a procedure for tribes to return to court with additional evidence. For the same reason, the majority's statement that "Judge Boldt had determined the entirety of the Muckleshoot's saltwater U&As," Maj. at 11, is directly contrary to *Final Decision #I* and Judge Rothstein's decision.

Second, the majority confuses law that applies before a proceeding under the Clarification Paragraph with law that applies after. In particular, the majority errs in relying on Judge Rothstein's statement—made before she held an evidentiary hearing under the Clarification Paragraph—that "[i]ssuing a supplemental finding under [the New Determinations Paragraph] defining the scope of Muckleshoot's U&A in Puget Sound would 'alter, amend, or enlarge upon' Judge Boldt's description," contrary to *Muckleshoot I*. Maj. at 12; *see* 19 F. Supp. 3d at 1275–76. This statement is merely a straightforward recitation of *Muckleshoot I*'s holding, made before Judge Rothstein heard evidence clarifying Judge Boldt's intent. As explained above, that holding does not speak to what happens after a proceeding under the Clarification Paragraph, and neither did Judge Rothstein.

\*\*\*

In sum, the majority fails to recognize the Muckleshoot's plight.  Because Judge Boldt made a Specific Determination using language that encompassed the entire Puget Sound, the tribe could not make arguments or present new evidence to Judge Rothstein about their historic entitlement to locations within Puget Sound; they were limited to evidence regarding Judge Boldt's intent.   Now that Judge Rothstein has determined that Judge Boldt intended to make a Specific Determination that the tribe had a U&A fishing location in Elliott Bay, the majority unfairly holds that the Muckleshoot cannot present any new evidence regarding their historical use of other locations in Puget Sound.  This frustrates Judge Boldt's rulings in *Final Decision #I* that his Specific Determinations were not comprehensive, and that tribes could invoke the court's continuing jurisdiction to determine additional U&A fishing locations.  Because Judge Boldt could not have intended this result, I dissent.