FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UPPER SKAGIT INDIAN TRIBE,
*Plaintiff-Appellee,*

SWINOMISH INDIAN TRIBAL
COMMUNITY,
*Intervenor-Plaintiff-*
*Appellee,*

v.

SAUK-SUIATTLE INDIAN TRIBE,
*Defendant-Appellant,*

PUYALLUP TRIBE OF INDIANS,
*Real-party-in-interest-*
*Appellee,*

and

STATE OF WASHINGTON;
TULALIP TRIBES; PORT GAMBLE
S'KLALLAM TRIBE; JAMESTOWN
S'KLALLAM TRIBE; SKOKOMISH
INDIAN TRIBE; SQUAXIN ISLAND
TRIBE; HOH INDIAN TRIBE,
*Real-party-in-interest*.

No. 21-35985

D.C. Nos.
2:20-sp-00001-
RSM
2:70-cv-09213-
RSM

OPINION

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, District Judge, Presiding

Argued and Submitted November 9, 2022
Seattle, Washington

Filed May 1, 2023

Before: Sandra S. Ikuta and Daniel P. Collins, Circuit
Judges, and Sidney A. Fitzwater,[*] District Judge.

Opinion by Judge Ikuta

## SUMMARY[**]

### Tribal Fishing Rights

The panel affirmed the district court's summary
judgment in favor of the Upper Skagit Indian Tribe in a case
concerning the usual and accustomed fishing areas
("U&As") of the Sauk-Suiattle Indian Tribe ("the Sauk
tribe") under *United States v. Washington*, 384 F. Supp. 312
(W.D. Wash. 1974) (*Final Decision I*).

In *Final Decision I*, Judge George Boldt resolved
disputes arising from the 1855 Treaty of Point Elliot, in

---

[*] The Honorable Sidney A. Fitzwater, United States District Judge for
the Northern District of Texas, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has
been prepared by court staff for the convenience of the reader.

which tribes in the area covered by the treaty agreed to convey most of their tribal land to the United States, in exchange for retaining their rights of taking fish "at usual and accustomed grounds and stations." *Final Decision I* included an injunction retaining jurisdiction to implement the decision.

The dispute in this case relates to the meaning of Finding of Fact 131 in *Final Decision I*, which defines the Sauk tribe's U&As. The Sauk tribe's U&As in Finding of Fact 131 include rivers and creeks that are tributaries to the Skagit River, but does not include the Skagit River itself. Therefore, fish migrating to the Sauk tribe's U&As must travel on the Skagit River, which is part of the U&As for the Upper Skagit tribe and the Swinomish Indian Tribal Community. The Sauk tribe contends that the Upper Skagit tribe and the Swinomish tribe should alter their fishing practices so that more fish reach the Sauk tribe's U&As. At the start of the 2020 fishing season, the Sauk tribe issued a fishing regulation that permitted its tribal members to harvest Coho salmon in two areas that include a portion of the main stem of the Skagit River. The Upper Skagit tribe invoked the continuing jurisdiction of the district court and sought an emergency order requiring the Sauk tribe to close its fishery. The district court concluded that Judge Boldt intentionally omitted the Skagit River from the Sauk tribe's U&As and therefore the Sauk tribe's attempts to open fisheries in the mainstream of the Skagit River were not in conformity with *Final Decision I.*

The panel agreed with the Upper Skagit tribe's contention that Finding of Fact 131 clearly and unambiguously established Judge Boldt's intent not to include the Skagit River in the Sauk tribe's U&As. The panel held that if Judge Boldt intended to include the Skagit

River in the U&As of the Sauk tribe, he would have used that specific term, as he did elsewhere. The panel held that the Lane Report, on which Judge Boldt heavily relied, reinforced its conclusion.

The panel rejected the Sauk tribe's four arguments to support their claim. First, the Sauk Tribe argued that Finding of Fact 131 was ambiguous because it lists rivers and creeks that are tributaries to the Skagit River, raising the inference that Judge Boldt intended to include the Skagit River as well. The panel held that it could not draw such an inference because Judge Boldt expressly included both the Skagit River and its tributaries in his determination of the Swinomish tribe's U&As. Second, the Sauk tribe pointed to a transcript of the testimony of James Enick (a member of the Sauk tribe), which allegedly indicated that Sauk tribal members must have fished "[u]p and down" the Skagit River. The panel concluded that Enick's testimony was not evidence showing that Judge Boldt meant to include the Skagit River in the U&As, and therefore did not change the panel's conclusion that Judge Boldt's intent was clear. Third, the Sauk tribe argued that the Sauk River and the Cascade River were part of the Sauk tribe's U&As, and that the most likely path of travel between the Sauk River and Cascade River is the Skagit River. This raised the inference that the Sauk tribe traveled and fished on the Skagit River, and thereby was evidence that Judge Boldt intended to include the Skagit River as part of the Sauk tribe's U&As. The panel held that the Sauk tribe's "path of travel" theory did not make Judge Boldt's intent unclear, or constitute evidence that Judge Boldt intended to include the Skagit River in the Sauk tribe's U&As. Finally, the Sauk tribe relied on scattered statements in the *Final Decision I* and the Lane Report as evidence that the Sauk tribe

historically fished in the Skagit River. The panel held that none of the statements undermined its conclusion that Judge Boldt's intent was clear, or showed that he intended to include the Skagit River in the U&As contrary to the plain text of Finding of Fact 131.

## COUNSEL

Jennifer Anne Gore Maglio (argued), Benjamin A. Christian, and Kehl Van Winkle, Maglio Christopher & Toale PA, Sarasota, Florida; Talis M. Abolins, Maglio Christopher & Toale PA, Seattle, Washington, for Defendant-Appellant.

David S. Hawkins (argued), Upper Skagit Indian Tribe, Sedro Wooley, Washington; Arthur W. Harrigan Jr., Tyler L. Farmer, and Bryn R. Pallesen, Harrigan Leyh Farmer & Thomsen LLP, Seattle, Washington; for Plaintiff-Appellee.

James M. Jannetta and Emily H. Haley, Office of the Tribal Attorney Swinomish Indian Tribal Community, La Conner, Washington, for Intervenor-Plaintiff-Appellee.

Joseph V. Panesko, Assistant Attorney General, Office of the Washington Attorney General, Olympia, Washington, for Real-Party-in-Interest State of Washington.

Samuel Judge Stiltner, Puyallup Tribe of Indians, Tacoma, Washington, Real-Party-in-Interest Puyallup Tribe of Indians.

## OPINION

IKUTA, Circuit Judge:

The Upper Skagit Indian Tribe (the Upper Skagit tribe) claims that the usual and accustomed fishing areas of the Sauk-Suiattle Indian Tribe (the Sauk tribe) under a 1974 decision do not include the Skagit River, and therefore that decision did not authorize the Sauk tribe to open salmon fisheries on that river. We conclude that the district court intended to omit the Skagit River from the Sauk tribe's usual and accustomed fishing areas.

### I

### A

This case is a subproceeding arising out of *United States v. Washington*, 384 F. Supp. 312 (W.D. Wash. 1974) (*Final Decision I*). In *Final Decision I*, Judge George Boldt resolved disputes arising from the 1855 Treaty of Point Elliot, in which tribes in the area covered by the treaty agreed to convey most of their tribal land to the United States, in exchange for retaining their rights of taking fish "at usual and accustomed grounds and stations." Treaty of Point Elliott art. v, 12 Stat. 927 (Apr. 11, 1859). *Final Decision I* defined the term "usual and accustomed grounds and stations" to include "every fishing location where members of a tribe customarily fished from time to time at and before treaty times, however distant from the then usual habitat of the tribe, and whether or not other tribes then also fished in the same waters." 384 F.Supp. at 332. In a lengthy and detailed opinion, Judge Boldt determined many of the usual and accustomed fishing places where tribes fished before the treaty. We refer to a tribe's usual and accustomed grounds

and stations, as defined in the findings of facts included in *Final Decision I*, and a 1991 modification of that decision, *United States v. Washington*, 18 F. Supp. 3d 1172, 1213 (W.D. Wash. 1991), as the tribe's "U&As."

Recognizing that a single decision could not resolve every future dispute over tribal fishing rights, *Final Decision I* included an injunction retaining jurisdiction to implement the decision.   384 F. Supp. at 413–20.   The injunction provided that any of the parties "may invoke the continuing jurisdiction of the court" to make one of seven types of determinations. *Id.* at 419. The parties to *Final Decision I* have most frequently invoked the court's jurisdiction for the determinations listed in paragraphs 25(a)(1) and 25(a)(6).[1] Paragraph 25(a)(1) allows tribes to invoke the court's jurisdiction to determine "[w]hether or not the actions, intended or effected by any party . . . are in conformity with [*Final Decision I*] or this injunction." *Id.* Paragraph 25(a)(6) allows tribes to invoke the court's jurisdiction to determine what was left unsaid by *Final Decision I*—"the location of any of a tribe's usual and accustomed fishing grounds [U&As] not specifically determined by [*Final Decision I*]." *Id.* The court first exercised its continuing jurisdiction shortly after issuing *Final Decision I*, when it determined the U&As of several tribes whose U&As were not "specifically determined" in *Final Decision I. See United States v. State of Wash.*, 459 F. Supp. 1020, 1028

---

[1] These paragraphs were previously termed paragraphs 25(a) and 25(f), but were renumbered by *United States v. Washington*, 18 F. Supp. 3d 1172, 1213 (W.D. Wash. 1991), which modified *Final Decision I*. Paragraph 25 prescribes procedural steps a tribe must take to invoke the court's jurisdiction to open a new subproceeding.

(W.D. Wash. 1978), *aff'd*, 645 F.2d 749 (9th Cir. 1981) (*Final Decision II*).

B

The dispute in this case relates to the meaning of Finding of Fact 131 in *Final Decision I*, which defines the Sauk tribe's U&As as follows:

> The usual and accustomed fishing places of the Sauk River Indians at the time of the treaty included Sauk River, Cascade River, Suiattle River and the following creeks which are tributary to the Suiattle River—Big Creek, Tenas Creek, Buck Creek, Lime Creek, Sulphur Creek, Downey Creek, Straight Creek, and Milk Creek. Bedal Creek, tributary to the Sauk River, was also a Sauk fishing ground. (Ex. USA-29, p. 13; Ex. MS-10, p. 3, l. 1-6).

*Final Decision I,* 384 F. Supp. at 376.

The parenthetical at the end of Finding of Fact 131 refers to two exhibits. The first exhibit, USA-29, p. 13, refers to an expert report prepared by Dr. Barbara Lane regarding the fisheries of the Sauk tribe (the Lane Report). In general, *Final Decision I* relies heavily on Dr. Lane's conclusions. In *Final Decision I*, Judge Boldt stated that "the reports of Dr. Barbara Lane . . . have been exceptionally well researched and reported and are established by a preponderance of the evidence," 384 F.Supp. at 350, that they are "authoritative and reliable," *id.*, and that they are not "controverted by any credible evidence in the case," *id.* Finding of Fact 131 is materially identical to Dr. Lane's Conclusion Five in the

Lane Report.[2] The second reference, "Ex. MS-10, p. 3, l. 1-6," refers to an excerpt from the testimony of James Enick, a member of the Sauk tribe, which is described below. *See infra* at 14–16.

The Sauk tribe's U&As in Finding of Fact 131 include rivers and creeks that are tributaries to the Skagit River, but do not include the Skagit River itself. Therefore, fish migrating to the Sauk tribe's U&As must travel on the Skagit River, which is part of the U&As for the Upper Skagit tribe and the Swinomish Indian Tribal Community (the Swinomish tribe). For several years, the Sauk tribe has taken the position that the Upper Skagit tribe and the Swinomish tribe should alter their fishing practices so that more fish reach the Sauk tribe's U&As. These tribes have not agreed to do so, however. This dispute came to a head at the start of the 2020 fishing season, when the Sauk tribe issued a fishing regulation that permitted its tribal members to harvest Coho salmon in two areas that include a portion of the main stem of the Skagit River between the confluence of the Cascade River and Rocky Creek.

In response to the Sauk tribe's regulation, the Upper Skagit tribe invoked the continuing jurisdiction of the district court pursuant to paragraph 25 of *Final Decision I*, and sought an emergency order requiring the Sauk tribe to close

---

[2] Conclusion Five in the Lane Report states:

> The principal fisheries of the Sauk Indians included Sauk River, Cascade River, Suiattle River and the following creeks which are tributary to the Suiattle River—Big Creek, Tenas Creek, Buck Creek, Lime Creek, Sulphur Creek, Downey Creek, Straight Creek, and Milk Creek. Bedal Creek, tributary to the Sauk River was also a Sauk fishing ground.

its fishery. The district court denied the motion for a temporary restraining order but granted the Upper Skagit tribe's request to open a new subproceeding. The Upper Skagit tribe then filed a motion for summary judgment requesting a determination that the Sauk tribe has no U&As in the Skagit River, and so the fishing regulation violated *Final Decision I*. The district court granted the Upper Skagit tribe's summary judgment motion under paragraph 25(a)(1). It concluded that Judge Boldt intentionally omitted the Skagit River from the Sauk tribe's U&As and therefore the Sauk tribe's attempts to open fisheries in the mainstem of the Skagit River were not in conformity with *Final Decision I*. The Sauk tribe appealed.

## II

We have jurisdiction under 28 U.S.C. § 1291. *Muckleshoot Tribe v. Lummi Indian Tribe*, 141 F.3d 1355, 1357 (9th Cir. 1998) (*Muckleshoot I*). We review de novo the district court's entry of summary judgment in favor of the Upper Skagit tribe and its interpretation of *Final Decision I*. *See Tulalip Tribes v. Suquamish Indian Tribe*, 794 F.3d 1129, 1133 (9th Cir. 2015).

As with any other judicial decision, a court must interpret *Final Decision I* "so as to give effect to the intention of the issuing court." *Muckleshoot I*, 141 F.3d at 1359 (citing *Narramore v. United States*, 852 F.2d 485, 490 (9th Cir. 1988)). In determining Judge Boldt's intent, a court begins by reviewing the language used in the decision. *See Muckleshoot Indian Tribe v. Lummi Indian Nation*, 234 F.3d 1099, 1100–01 (9th Cir. 2000) (*Muckleshoot II*). Because "[o]pinions, unlike statutes, are not usually written with the knowledge or expectation that each and every word may be the subject of searching analysis," we do not follow statutory

canons of construction with their focus on "textual precision" when interpreting judicial opinions. *United States v. Muckleshoot Indian Tribe*, 235 F.3d 429, 433 (9th Cir. 2000) (*Muckleshoot III*). Rather, a court reads the language of the decision in the context of the decision as a whole and the entire record before Judge Boldt, "augmented only by evidence of contemporaneous understanding of ambiguous terms." *Upper Skagit Indian Tribe v. Washington*, 590 F.3d 1020, 1025 n.9 (9th Cir. 2010). The court "may resolve conflicting inferences and evaluate the evidence to determine Judge Boldt's intent." *Id.*

When a moving party invokes the district court's jurisdiction under paragraph 25(a)(1), it bears the burden of establishing that its interpretation of *Final Decision I* is consistent with Judge Boldt's intent. *See Tulalip Tribes*, 794 F.3d at 1133. The moving party must carry this burden regardless whether it claims that a contested area is part of its own U&As, or that a contested area is not part of another tribe's U&As. *See id.* We have sometimes described a subproceeding under paragraph 25(a)(1) as involving "a two-step mode of analysis." *Id.*; *see also Upper Skagit*, 590 F.3d at 1023.

At step one, a court uses the standard tools for interpreting precedent, starting with the text of the applicable Finding of Fact and considering the language at issue in the context of the Final Decision as a whole. A court also considers the record evidence before Judge Boldt, *see Muckleshoot III*, 235 F.3d at 432, along with any other evidence raised by the moving party that sheds light on Judge Boldt's understanding of geography at the time, *see Upper Skagit*, 590 F.3d at 1024–25. At this step, we have upheld a "district court's decision [as] correctly interpret[ing] Judge Boldt's opinion on the basis of

information known to Judge Boldt and the words he chose." *Muckleshoot II*, 234 F.3d at 1101. However, "whether the text [of a Finding of Fact] is unambiguous or not," a court must understand the Finding of Fact "in light of the facts of the case," *Muckleshoot III*, 235 F.3d at 433, and so may proceed to step two to determine whether the moving party has carried "the burden of showing that there was no evidence in the record before Judge Boldt," that favors the non-moving party's contrary interpretation of the Finding of Fact in a way that would undermine the moving party's theory of Judge Boldt's intent. *See Tulalip Tribes*, 794 F.3d at 1133 (citation and quotation marks omitted).**[3]**

In sum, in undertaking this two-step inquiry, the district court must determine whether the moving party has carried its burden of showing that its interpretation of the Finding of Facts is consistent with Judge Boldt's intent. If so, the moving party is entitled to judgment as a matter of law. *See Upper Skagit*, 590 F.3d at 1023, 1026. In contrast, if the moving party's interpretation is not consistent with Judge Boldt's intent, the court must dismiss the moving party's claim. *See Tulalip Tribes*, 794 F.3d at 1135–36.

---

[3] *See id.* at 1133–35 (holding that, at step two, the moving party failed to carry its burden of showing that the contested area was excluded from the non-moving party's U&As because the evidence before Judge Boldt demonstrated that the non-moving party had fished in the contested area); *see also Upper Skagit Indian Tribe v. Suquamish Indian Tribe*, 871 F.3d 844, 849–50 (9th Cir. 2017) (holding that, at step two, the moving party met its burden of showing that the contested area was excluded from the non-moving party's U&As because the non-moving party presented only general evidence of travel through waters adjacent to the contested area, which did not undermine the moving party's interpretation of Judge Boldt's intent.)

III

A

We now turn to Finding of Fact 131, which determined the Sauk tribe's U&As. The Upper Skagit tribe argues that this finding clearly and unambiguously establishes Judge Boldt's intent not to include the Skagit River in the Sauk tribe's U&As. *See Suquamish*, 871 F.3d at 848.

We agree. The text of Finding of Fact 131 does not include the Skagit River. Instead, it lists the Suiattle River and nine creeks which flow into the Sauk River and Cascade River. It also lists the Sauk River and the Cascade River, which flow into the Skagit River. Despite including three rivers, it does not list the Skagit River. Judge Boldt's inclusion of the Skagit River in the Upper Skagit tribe's U&As, *see Final Decision I*, 384 F. Supp. at 379, and in the Swinomish tribe's U&As, *Final Decision II*, 459 F. Supp. at 1049, while omitting it from the Sauk tribe's U&As, indicates that his omission was intentional, *see United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000). Had Judge Boldt intended to include the Skagit River in the U&As of the Sauk tribe, "he would have used that specific term, as he did elsewhere." *Id.*

The Lane Report, on which Judge Boldt heavily relied, reinforces our conclusion. Conclusion Five of the Lane Report, which is substantially identical to Finding of Fact 131, did not include the Skagit River as one of the Sauk tribe's fishing grounds. Elsewhere, the Lane Report stated that "some of the [Sauk tribal members], if not most" continued to live "along the Sauk and Suiattle rivers where their descendants still reside," and were "distinguished from the residents of the main Skagit River." This evidence strongly suggests that the Sauk tribe did not fish in the Skagit

River itself, which further supports our conclusion that Judge Boldt did not intend to include it.

## B

The Sauk tribe disagrees with our conclusion. It argues that Finding of Fact 131 is ambiguous in the context of *Final Decision I* as a whole and the evidence in the record, and we cannot reliably determine Judge Boldt's intent. The Sauk tribe raises four arguments to support this claim. We address each argument in turn.

## 1

First, the Sauk tribe argues that Finding of Fact 131 is ambiguous because it lists rivers and creeks that are tributaries to the Skagit River, raising the inference that Judge Boldt intended to include the Skagit River as well. We cannot draw such an inference because Judge Boldt expressly included both the Skagit River and its tributaries in his determination of the Swinomish tribe's U&As, *Final Decision II*, 459 F. Supp. at 1049. Judge Boldt's inclusion of rivers and tributaries in other tribes' U&As strongly indicates that Judge Boldt did not intend to include a river by reference to its tributaries alone; rather, he listed a river and its tributaries when he intended to include both. Therefore, we reject the Sauk tribe's argument that Finding of Fact 131's list of tributaries undermines our conclusion that Judge Boldt's intent is clear.

## 2

Second, the Sauk tribe points to a transcript of the testimony of James Enick (a member of the Sauk tribe) in September 1973 regarding his knowledge of the Sauk tribe's fishing locations. The transcript stated:

Q: What were the areas where your tribe traditionally fished?

A: Wherever the people were, but mostly on the Sauk River, the whole river, and all the streams coming into the river, that's where the Indians fished.

Q: Where has the Sauk-Suiattle Tribe lived?

A: Up and down the Skagit River and the Sauk River mostly.

According to the Sauk tribe, the excerpt indicates that the Sauk tribe fished "[w]herever the people were," meaning wherever tribal members lived, and that the Sauk tribe lived "[u]p and down the Skagit River." Therefore, according to the Sauk tribe, Sauk tribal members must have fished "[u]p and down" the Skagit River. The Sauk tribe notes that Judge Boldt incorporated this testimony by including a parenthetical reference to "Ex. MS-10, p. 3, l. 1-6" at the end of Finding of Fact 131. The Sauk tribe argues that the inclusion of this parenthetical, which incorporates Enick's 1973 testimony by reference, makes Finding of Fact 131 ambiguous and raises the inference that Judge Boldt intended to include the Skagit River in the Sauk tribe's U&As.

We disagree. First, Enick's testimony does not state that the Sauk tribe fished on the mainstem of the Skagit River, and so is not evidence that the river was part of the Sauk tribe's U&As. Moreover, in identifying the Sauk tribe's fishing areas elsewhere in his testimony, Enick states that the Sauk tribe fished "mostly on the Sauk River, the whole river, and all of the streams coming into the river." This testimony is consistent with Finding of Fact 131, which also includes

the Sauk River and a tributary to the river.  Second, although the Sauk tribe puts weight on Judge Boldt's reference to this excerpt in the parenthetical at the end of Finding of Fact 131, that reference indicates only that Judge Boldt was aware of this testimony, yet nevertheless chose not to include the Skagit River in his findings.

We therefore conclude that Enick's testimony is not evidence showing that Judge Boldt meant to include the Skagit River in the U&As, and therefore does not change our conclusion that Judge Boldt's intent is clear.

3

Next, the Sauk tribe argues that the Sauk River and the Cascade River are part of the Sauk tribe's U&As, and that the most likely path of travel between the Sauk River and Cascade River is the Skagit River.  According to the Sauk tribe, this raises the inference that the Sauk tribe traveled and fished on the Skagit River, which is evidence that Judge Boldt intended to include the Skagit River as part of the Sauk tribe's U&As.

In making this argument, the Sauk tribe relies on our cases analyzing U&As describing large marine areas between distant geographic anchor points.  For example, Finding of Fact 46 of *Final Decision I* provided that "the usual and accustomed fishing places of the Lummi Indians at treaty times included the marine areas of Northern Puget Sound from the Fraser River south to the present environs of Seattle."  384 F. Supp. at 360.  We held that this Finding of Fact was "ambiguous, because it does not delineate the western boundary of the Lummi's usual and accustomed grounds and stations." *Lummi Indian Tribe*, 235 F.3d at 449.

We nevertheless discerned that even though the Finding of Fact did not mention Admiralty Inlet (a marine "passageway along the west side of Whidbey Island") by name, Judge Boldt intended to include it "within the 'marine areas of Northern Puget Sound from the Fraser River south to the present environs of Seattle'" because "Admiralty Inlet would likely be a passage through which the Lummi would have traveled from the San Juan Islands in the north to the 'present environs of Seattle.'" *Id.* at 450, 452; *see also Tulalip Tribes*, 794 F.3d at 1133 (holding that U&As described as "the marine waters of Puget Sound from the northern tip of Vashon Island to the Fraser River" were ambiguous).

The Sauk tribe's reliance on these cases is misplaced. For example, unlike the finding of fact determining the Lummi's U&As, Finding of Fact 131 does not ambiguously describe marine areas between two distant geographic anchor points. Instead, Finding of Fact 131 describes specific rivers and tributaries, and does not describe any area extending between the Sauk River and Cascade River, or indicate that Judge Boldt intended to include a path of travel between those rivers. Therefore, the Sauk tribe's "path of travel" theory does not make Judge Boldt's intent unclear, or constitute evidence that Judge Boldt intended to include the Skagit River in the Sauk tribe's U&As.

4

Finally, the Sauk tribe relies on scattered statements throughout *Final Decision I* and the Lane Report evidencing that the Sauk tribe historically fished in the Skagit River.

First, the Sauk tribe points to statements suggesting that Sauk tribal members lived near the Skagit River. For instance, Finding of Fact 129 states that the Sakhumehu tribe

(predecessor to the Sauk tribe) resided in a village located at the confluence of the Sauk River and Skagit River and that the historical residence of the Sauk tribe was on "the upper reaches of the Skagit River System." *Final Decision I*, 384 F. Supp at 375. Further, Dr. Lane's summary of her report states that the "principal fisheries" of the Sakhumehu "were the headwaters of Skagit River including Baker River, Sauk River, and the smaller creeks which belonged to that water system."

The Sauk tribe also points to evidence that individual Sauk tribal members had access to the Skagit River. For instance, Finding of Fact 129 indicates that Sauk tribal members sometimes married Upper Skagit tribal members. *Final Decision I*, 384 F. Supp. at 375–76. The Lane Report stated that "some of the Sauk people went to the Cascades on the Skagit River to fish and to Baker River to fish with Upper Skagit friends and relatives there."

Further, the Sauk tribe points to Finding of Fact 132, which states that the tribe "traveled to the saltwater in order to procure marine life unavailable in their own territory." *Id.* at 376. Because the rivers listed in the Sauk tribe's U&As do not connect to the saltwater, the Sauk tribe argues that the tribe must have traveled on the Skagit River to the ocean.

Finally, the Sauk tribe relies on Dr. Lane's general statement that "Indian fisheries existed at all feasible places along a given drainage system from the upper reaches of the various tributary creeks and streams, down the main river system to the saltwater."

None of these statements undermines our conclusion that Judge Boldt's intent was clear, or shows that Judge Boldt intended to include the Skagit River in the U&As contrary to the plain text of Finding of Fact 131. Neither the

statement that a Sauk village is located at the confluence of the Sauk and Skagit Rivers, nor that Sauk tribal members resided on the upper reaches of the Skagit River system, is evidence of U&As on the mainstem of the Skagit River. Likewise, Dr. Lane describes headwaters as distinct from the main part of a river, so the presence of the Sauk tribe's principal fisheries in the headwaters of the Skagit River does not establish U&As on the mainstem of the river. Nor does evidence that *some* Sauk tribal members fished with friends and relatives on the Skagit River establish U&As for the tribe. As *Final Decision I* made clear, "occasional and incidental [fishing] was not considered to make the marine waters traveled thereon the usual and accustomed fishing grounds of the transiting Indians." 384 F. Supp. at 353. The statement that the Sauk tribe traveled to the saltwater, without more, does not establish customary fishing on the Skagit River to support U&As on it. Finally, Dr. Lane's general statement about Indian fisheries is not sufficiently specific to the Sauk tribe to inform Judge Boldt's intent regarding the Sauk tribe's U&As.

## IV

We conclude that Judge Boldt did not intend to include the Skagit River in the Sauk tribe's U&As. *See Tulalip Tribes*, 794 F.3d at 1133. Because there is no ambiguity as to Judge Boldt's intent, we affirm the district court's holding that the Upper Skagit tribe was entitled to summary judgment.

**AFFIRMED.**